RICE, Appellant, v. SMITH et al.

Division One, December 24, 1902.

1. **Lessor and Lessee:** TESTIMONY: LEGAL CONCLUSION. The testimony of a witness that he rented mining lands from defendants, is a legal conclusion, and will not be the basis of a judgment unless the facts show him to have been a lessee.

2. ————: JOINT UNDERTAKING: COMMUNITY OF INTERESTS AND RESPONSIBILITY. Plaintiff's husband, while working in a drift in a mine, was struck by a boulder which fell from the roof, and killed. The defendants were the licensees of the mine, which at the time of the accident was being operated under a contract between them and one Raynes, who at his own expense was to mine the ore, put it in the tub and attach the tub to the hoisting apparatus, and defendants were to see to the hoisting of it, prepare it for sale, sell it, and Raynes for his share was to have one-half the proceeds. Raynes employed plaintiff's husband, paid him, and defendants had nothing to do with him. *Held*, that plaintiff's complaint for damages is not to be disposed of on the theory that Raynes was a renter or an independent contractor operating the mine at his own expense, but it relates to the condition of the mine, in which there was a community of interests in both Raynes and defendants. The contract means that they were to work the mine for their joint account and share the profits, and hence the duty devolved on defendants to see that the mine they furnished, and whose usufruct they enjoyed, was in a reasonably safe condition for men to work in, and if they were negligent in that duty and that negligence resulted in the miner's injury, they must respond in damages.

Appeal from Jasper Circuit Court.—*Hon. Jos. D. Perkins,* Judge.

REVERSED AND REMANDED.

*Redding & Owen* for appellant.

(1) The defendants were operating and controlling the mine at the time they made the contract with Raynes to dig the ore and put it in the tub for one-half

of the proceeds; they did not release full control of the mine to Raynes, the contract was for their mutual benefit, they were contractors with each other, and the defendants being the parties furnishing the instrumentalities (in this case the place where plaintiff's husband was required to work) were bound to furnish Raynes and his employees a reasonably safe place in which to do the work. Roddy v. Railroad, 104 Mo. 248. (2) The law imposes a duty upon the party furnishing an appliance, machine, vehicle, place or structure of any kind to be used in his occupation, to exercise prudence to see that the thing he furnishes is not imperfect or so out of order as to cause injury to persons thus employed. Sykes v. Railroad, 88 Mo. App. 204. (3) Defendants, soon after the death of plaintiff's husband, employed persons to timber the ground where he was killed; this was evidence of their duty to keep the ground in repair and should have been submitted to the jury. Woods v. Railroad, 51 Mo. App. 501; Mitchell v. City of Plattsburg, 33 Mo. App. 556; Brennan v. St. Louis, 92 Mo. 482; Rusher v. City of Aurora, 71 Mo. App. 424.

*Frank L. Farlow* for respondents.

(1) In this case it was not shown that the relation of master and servant existed between the plaintiff's husband and defendants, and the defendants are not liable. Mound City Paint Co. v. Conlon, 92 Mo. 221. Appellant is in error in saying that defendants controlled this mine, for the evidence of Raynes shows that he was in full charge of the ground for himself and not for defendants. The appellant seems to rely upon the case of Roddy v. Railroad, 104 Mo. 234. This case was before the trial court, and is more favorable to the defendants than to plaintiff. The defendants did not furnish the place in which plaintiff's husband was working. Raynes under his contract had been in charge for weeks, and it is common knowledge that the place, the conditions and the surroundings would change every

day; therefore defendants did not furnish the plaintiff's husband the place in which to work as contended by plaintiff. While the defendants furnished to Raynes some of the tools with which to do the mining, yet no complaint is made of the tools, but that the place was dangerous; and if it was so, the plaintiff's husband and Raynes who had employed him made it so, and with which defendants had nothing to do. Under the evidence in this case the plaintiff can not recover, and we cite as an authority in point, Roddy v. Railroad, 104 Mo. 234. (2) The defendants had no authority or control over Raynes or his employees—in the condition in which they kept the drift, how often it was trimmed, or in what manner; this was all left to Raynes, the contractor, and his employees; and unless the defendants had the right to direct the work, they can not be held liable for the act of Raynes, the contractor, even though he was guilty of negligence towards his employees. Troth v. Norcross, 111 Mo. 635. (3) Raynes was an independent contractor and was to cut the ore and rock and hang it on the rope at the bottom of the shaft and defendants were to hoist and clean the ore, and there was no agreement or stipulation as to the manner in which he was to run the drifts or cut the ore, and the defendants are not liable to plaintiff, even assuming that Raynes was guilty of negligence towards the plaintiff's husband, Rice. Raynes only represented the will of the defendants as to the result of his work and not as to the mode, manner or means by which he accomplished it. Fink v. The Missouri Furnace Co., 82 Mo. 276; Burns v. McDonald, 57 Mo. App. 600.

VALLIANT, J.—Suit for damages for the death of plaintiff's husband which she alleges was caused by the negligence of defendants. The petition avers that the defendants were licensees of a mine and in control of the same, mining lead and zinc ore; that the plaintiff's husband was working in a drift in the mine when a boulder fell from the roof of the drift, struck him on the head and killed him; that the mine was in an unsafe

condition, in that for a long time prior to the accident large stones, boulders and dirt had continually been sloughing off and falling from the sides and roof of the shaft and drift, and that this condition was known to defendants or would have been known to them if they had exercised ordinary care. The petition states that one Raynes was engaged with the defendants in operating the mine under an agreement to the effect that he was-to dig and mine the ore in the drift, put it in the tub and hook the tub to the hoisting rope, then his part of the work was done, and the defendants were to hoist the ore, clean it and sell it, and divide the proceeds with Raynes; Raynes was to employ the miners to do the work under ground and pay them; the defendants were to do the rest. The plaintiff's husband was employed by Raynes and was at work for him in the drift when the boulder fell on him.

The answer was a general denial, a plea of contributory negligence and a special plea to the effect that plaintiff's husband was not in their employ nor under their control, but exclusively in the service of Raynes.

Upon the trial the plaintiff's evidence tended to show the following, viz.: That defendants were licensees of the mine in question and had sometime before this event operated it. That at the time of the accident it was being operated under a contract between defendants and Raynes to this effect: Raynes at his own expense was to do all that was necessary to be done under ground, to mine the ore, put it in the tub and attach the tub to the hoisting apparatus; defendants were then to see to the hoisting it, preparing it for sale and selling it, and Raynes for his share was to have half the proceeds. Raynes was to have full control of all operations under ground. He was a witness for plaintiff and this is how he understood the contract: "Q. What was your contract with Smith and Firth when you went in there? A. I rented the ground from Smith and Firth. I was to cut the dirt and hang it on the rope for one-half and pay all the ground expenses. I was

to hire my own men and pay them; they were to hire their own men and pay them; they had nothing to do with my men and I had nothing to do with their men. Q. Who employed Rice? A. I did. Q. What was you to give him a day? A. Two dollars. Q. What, if anything, did Smith and Firth have to do with employing him? A. Nothing. Q. I believe you stated that you got one-half of the proceeds from the sale of ores? A. Yes, sir.''

Plaintiff's evidence also tended to show that the drift was cut through soapstone into which occasionally boulders were imbedded, that the soapstone was of such a nature that it sloughed off from time to time and pieces of it fell and rendered the situation dangerous for the men working there, and that this fact had been brought to the notice of the defendants sometime before this accident and during the operation of the mine under the Raynes contract.

At the close of the plaintiff's evidence the court gave an instruction to the effect that the plaintiff was not entitled to recover. Thereupon she took a nonsuit with leave, and after due proceedings brings the cause here for review.

The theory on which the defense of the court's ruling is based is, that Raynes was an independent contractor operating the mine on his own account, that the deceased was in his employ holding no contractual relation with defendants and they owed him no duty.

If the contract between Raynes and the defendants was simply to the effect that the former rented the land, or the mining plant, from defendants, who had no further interest in its operation than that in the nature of a lessor's interest, that theory would be correct. Although under such conditions it might appear that that mine was in a dangerous condition and unfit for use, yet the miner could look no further than to his employer for redress for his injuries. This subject is discussed and the authorities reviewed in Roddy v. Railroad, 104 Mo. 234.

But that is not exactly the nature of this contract.

Raynes testified: "I rented the ground from Smith & Firth." That is more in the nature of a conclusion drawn by the witness than the statement of a fact. That is his opinion as to the effect of the contract, and whilst it may be correct in a certain aspect, yet it is not entirely correct as affecting the law of this case. If Raynes was simply a renter, then the defendants had no interest except their rents, no interest in the operation of the mine.

Although Raynes and the defendants are by the terms of the contract to share equally the profit of the operation of the mine, yet they are not thereby made partners in the full sense of that word. Raynes is to a certain extent an independent contractor, and has his duties to perform, for neglect of which he alone is responsible, and likewise the defendants are to a certain extent independent contractors and have their duties to perform, as to which they alone must account. But there is also a community of duty and a community of responsibility arising out of this contract.

Raynes was to do the underground work and as to this he was alone responsible. If one of his employees should be injured through his negligence in reference to that part of the work, he alone would be liable. And on the other hand if one of the employees of the defendants, engaged in hoisting the ore or preparing it for market, should suffer by the negligence of the defendants in reference to that part of the work, they only would have to respond. But the complaint here made does not relate to the independent duty that Raynes was to perform, nor to the independent duty that the defendants were to perform, but it relates to the condition of the mine which is the subject in which there was a community of interest in both contracting parties.

The contract as stated in detail by Raynes in his testimony does not mean that the mine is rented to him, although he uses that term; it means that he and the defendants are to work it for their joint account and share the profits. Raynes for his share of the burden

undertook all the underground work, leaving to defendants only the lighter and less dangerous part, and to compensate for the greater burden in the operation that was thrown on Raynes, the defendants contributed to the joint concern the usufruct of the mine, and thus the investments were equalized.

So far as the underground operation is concerned, the case may be stated thus: Raynes was to furnish the labor, and defendants were to furnish the mine, and they were to share the profits. In that state of the case the duty devolved on the defendants to see that the mine they so furnished was in a reasonably safe condition for men to work in.

The same principle is involved here that was discussed in the case of Roddy v. Railroad, supra. In that case the plaintiff was not in the employ of the railroad company, but of one Pickle, who owned a quarry and also owned a railroad switch that connected with the defendant's track. Defendant furnished a car to be used on Pickle's switch, to be loaded and moved on to defendant's railroad for transportation. The plaintiff alleged that he was injured while using the car on Pickle's switch because of a defect in the brake. The defendant contended that as plaintiff was in Pickle's employ, and under no contractual relation with defendant, the latter was not liable even if it did furnish a defective car to Pickle. But the court said, l. c. 248-9: ''Under this evidence it is clear that what was to be done by the respective parties [Pickle and the railroad company] under the contract, was for their mutual profit, and each was a contractor with the other, to perform a particular part of the work necessary to carry out the common purpose. . . . We think each of these contracting parties owed to the other, and his employees, the duty of properly discharging his part of the joint undertaking, in respect to any matter exclusively devolving upon him. Pickle had nothing to do with selecting or providing the cars. That duty was intrusted entirely to defendant. They were in-

tended for the use of Pickle and his servants in discharging his part of the contract, and we think the obligation rested upon defendant to use ordinary care to provide such as would be reasonably safe for such use.''

Under the contract in evidence in this case the duty devolved on the defendants to furnish the mine in a reasonably safe condition for operation by Raynes and his employees. The plaintiff's evidence tended to show that they did not perform this duty, and, therefore, the court erred in sustaining the demurrer to the plaintiff's evidence.

The judgment is reversed and the cause remanded to be retried.in accordance with these views. *Brace, P. J.,* and *Marshall, J.,* concur; *Robinson, J.,* dissents.