CATHERINE ETCHISON, Respondent, v. JAMES W. LUSK, W. C. NIXON, and W. B. BIDDLE, Receivers of SAINT LOUIS & SAN FRANCISCO RAILROAD, Appellants.

Springfield Court of Appeals, January 8, 1917.

1. **RAILROADS: Negligence: Relationship Sustained Between Parties: Care Required.** Action against a railroad for injuries occasioned by the manner in which defendant's servants handled

certain cars. In order to establish actionable negligence, the manner in which the cars were handled is of small consequence unless the injured party can show a relationship existing out of which a duty arose to such party not to handle the cars as they were handled.

2. ———: ———: ———: **Who Not Trespasser.** Action against a railroad for injuries, the result of a fall in a car occasioned by another car being violently pushed against it. Plaintiff's son and wife were employed by the defendant company to cook for its bridge gang. Plaintiff was living with her son in one of the cars assisting him about his work. She was not a trespasser as regards duty of defendant for her safety merely because of not having executed a release concerning women on such cars where she did not know of such rule and the foreman of the bridge crew who had charge of the train knew that she was assisting her son at his work and had no reason to believe that she knew of such rule.

3. ———: ———: **Licensee With Interest.** Where one sustains the relationship of a "licensee with interest" to a railroad company, such relationship entitles him to the exercise of ordinary care from the servants of that company.

4. ———: ———: ———: ———: Plaintiff's son and his wife were engaged in cooking and performing other duties on defendant's train in which defendants' bridge crew boarded. Plaintiff assisted the son in such work and made her home with him on the train with knowledge of defendants' foreman in charge of the train, though she received no pay from her son or from defendants. As regards the duty of defendants to exercise reasonable care for her safety, she was a licensee with an interest.

Appeal from Pemiscot County Circuit Court.—*Hon. Sterling H. McCarty*, Judge.

AFFIRMED.

*W. F. Evans, Moses Whybark* and *A. P. Stewart* for appellants.

*R. L. Ward* for respondent.

FARRINGTON, J.—The plaintiff, Catherine Etchison, recovered a judgment for $1500 on account of personal injuries sustained by reason of the alleged negligence of defendants' employees operating a switch engine which jammed certain cars into a railroad car

in which the plaintiff was standing. From this judgment the defendants appealed assigning several errors all of which center about and are determined by a disposition of the question raised by defendants' refused instruction in the nature of a demurrer to the evidence, which will result in a determination of the question of the liability of the defendants under the undisputed facts.

The plaintiff is the mother of William Etchison whose wife is Effie Etchison. William, some nine years prior to April, 1915, had resided in Blytheville, Arkansas, and maintained a home there, the family consisting of himself, his wife, his daughter (who at the time of the trial was thirteen years of age), and his mother, the plaintiff. Some time in April or May, 1915, William and his wife entered the employment of the defendants whereby they were running the boarding outfit of one of the defendants' bridge gangs. William and his wife were employed to do this work by one H. H. Sayles who was foreman in charge of the bridge gang. Defendants furnished four or five cars with sleeping quarters for their laborers and a car in which they ate and in which the cooking was done. This constituted an ordinary boarding train for a bridge gang. The employment required William and his wife to cook and make up the bunks and do all the necessary things in this regard toward feeding and lodging the laborers.

Plaintiff, who had been living with her son at his home in Blytheville, had gone to Illinois for several months' visit, and on returning to what she terms "her home" which was the home of her son she found that William had leased his house and taken the family and was living on this boarding train at Puxico, in this State, where the bridge gang was doing work. William went to Blytheville and took his mother to Puxico where she resumed her place in his family as a member thereof. She reached Puxico and first went on the boarding cars where William and his wife and daughter were then living on June 20, 1915. She remained there

constantly until about the sixth day of July when she was injured in the manner hereinafter described. During this interval of about sixteen days she helped her son and daughter-in-law carry on the work of running the boarding train. Her testimony in this connection is as follows: "I stayed there after I got there, that was my home. I was helping my daughter cook when I got hurt. I didn't wait on the table, just helped cook; peeled potatoes, stringed beans, and put on the beans and potatoes to cook and watched them, and swept, and made up the beds. I did that every day, we were busy, had lots to do. At the time the accident occurred me and my daughter were in the dining car about to begin supper, and I was standing up."

During this interval Sayles—defendants' foreman of the bridge gang and the man in charge of the cars and the one who according to his testimony had supervision of the cooking and employed those who were to cook and who made the arrangement with William and his wife—saw the plaintiff on the cars every day and saw her doing the very things which she testified to having done. There is no doubt under the facts of this record that Sayles was in supreme command of the bridge gang and of those doing work on the boarding cars, and that he during this interval that plaintiff was on the cars before she was injured saw her engaged in the work of helping her son and daughter-in-law do what they were employed to do.

This work train on the sixth of July was on a sidetrack at Puxico. An engine of another train operated by defendants' servants in doing some switching backed some cars into the work train in such a violent manner as to knock the plaintiff down thereby breaking her hip and right arm. The manner in which the switching crew hit the work train is described by one of the witnesses in such language as this: "A hard knock," "A terrible force," "With such force that it knocked the bean pot off the stove, turned it upside down, and knocked the teakettle, and the cars were hit

with such force that it threw the water out of the bottom of the water keg.''

The evidence amply warrants the finding that the switching crew with the engine and cars jammed into this work train in an unusual manner causing the cars of the work train to receive an extraordinary and unusual jar, and that it was this jar that knocked plaintiff down, to her injury.

The railroad had the following rule governing these boarding cars and the foreman of extra gangs which was introduced in evidence by the defendants: ''Rule 157. Foremen of extra gangs will not be permitted to keep children in their boarding cars, unless the cars are spurred out and entirely disconnected from the main line or sidings, and when their equipment is moved over the road, women and children must travel on regular passenger trains. They must keep their camp in a clean, sanitary condition, and see that they are at all times safe for transportation over the road. Camp cars should be spurred out whenever possible to do so. Women are not permitted on camp cars unless they have executed the required release.'' Defendants also introduced in evidence releases which had been signed by William and his wife in compliance with this rule. It is not contended that the plaintiff had ever been informed of this rule or knew anything about it.

On this state of facts the plaintiff contends that defendants are liable to her for the negligent manner in which their servants bumped into the work train on which she was living and that they owed her a duty to exercise ordinary care not to injure her by the operation of their equipment.

Defendants contend that regardless of the manner in which the car on which plaintiff was living at the time of the accident was handled they owed plaintiff no duty other than the duty they would owe a trespasser, volunteer, or at most a bare licensee. A determination of this question solves this case.

It therefore becomes important to ascertain what relationship existed between the plaintiff and the defend-

ants in order to declare the duty, if any, which defendants owed the plaintiff under the facts.

It is admitted that at the time the boarding cars were struck the servants of the defendants operating the switch engine could not see the plaintiff because she was in one of the cars, and therefore if the plaintiff sustained no relation to the defendants other than that of a trespasser, volunteer, or mere licensee, there is no proven liability in this case—because she was not seen by the servants to whom the negligence is attributed in time to have averted the accident; that is, as the cars were about to be jammed together the defendants' servants did not and could not see the impending danger to which they were subjecting this plaintiff.

It is not the law that merely because the defendants owed to some of their employees a duty of handling the boarding cars with ordinary care they will thereby be held liable for an injury to one to whom they owed no duty with reference to the handling of the cars save the duty they owed to trespassers, volunteers and bare licensees. In order to establish actionable negligence the manner in which the cars were handled is of little moment unless the injured party can show a relationship existing out of which arose a duty to that party not to handle the cars as they were handled. This question has been considered in a learned opinion written by PEASLEE, J., in the case of Garland v. Boston and Maine Railroad, 76 N. H. 556, 86 Atl. 141, 30 Am. & Eng. Anno. Cas. (1913 E), 924. [See, also: Youmans v. Wabash R. Co., 143 Mo. 393, 1. c. 399, 400, 127 S. W. 595; Hall v. Mo. Pac., 219 Mo. 553, 118 S. W. 56.]

Appellants, contending that plaintiff was a mere trespasser and therefore entitled to the exercise by the railroad of only reasonable care to avoid injuring her after she was known to be in a position of impending danger, cite the following cases: Youmans v. Wabash R. Co., 143 Mo. App. 393, 127 S. W. 595; O'Donnell v. K. C., St. L. & C. R. Co., 197 Mo. 110, 122, 95 S. W. 196; Hall v. Mo. Pac. Ry. Co., 219 Mo. 553, 118 S. W. 56; Whitehead v. St. L., I. M. & S. Ry. Co., 99 Mo. 1. c. 269. 11 S. W.

195 M. A.—13

751; Farber v. Mo. Pac. Ry. Co., 116 Mo. l. c. 91, 22 S. W. 631; Berry v. Mo. Pac. Ry. Co., 124 Mo. 223, 25 S. W. 229; Feeback v. Mo. Pac. Ry. Co., 167 Mo. l. c. 216, 66 S. W. 965; and Earl v. C. R. I. & P. Ry. Co. (Iowa), 79 N. W. 381. In each of those cases there is some feature distinguishing it from the case at bar in a vital way—the person attempting to hold the railroad company was on the train without the knowledge of those in charge of it, or as a violator of the law, or in perpetrating a fraud on the railroad, or on the train with the knowledge of his presence by the conductor or employee in charge of the train such person knowing that the conductor or other employee was violating a rule of the company in permitting him to remain. In the case at bar Sayles was the foreman in charge of this work train. He knew that if he complied with the rule of the defendants the plaintiff to remain and work thereon must sign the release called for in the rule, whereas the plaintiff did not know of such a rule, and Sayles had no reason to believe that she knew of it. She was on the car, not for the purpose of perpetrating a fraud on the railroad, nor was she in collusion with Sayles' who was in charge, and she was not violating any law of the land by being there. All of the above cases turn on the fact that one of these conditions existed from which it was concluded that such plaintiffs were either trespassers or bare licensees.

The strongest case in their favor presented by appellants in that of Wencker v. M., K. & T. Ry. Co ., 169 Mo. 592, 70 S. W. 145. There, the plaintiff's eleven-year-old boy was sent to the railroad depot to carry food to the conductor and crew of a freight train under an arrangement which plaintiff had not with the railroad company but with the individual members of the crew working for the railroad. It was held in that case that the boy in going on the caboose under the direction from the conductor of the train was, so far as the railroad was concerned, a mere licensee or trespasser, and the plaintiff was denied a recovery for the boy's death.

The distinguishing feature between that case and cases which we will refer to presently is this, that there

was no community of interests existing which arose out of the work the boy was doing between the plaintiff, his mother, and the defendant, the railroad company.

In our case, the defendants through their foreman undertook to and did supply boarding and sleeping cars for their employees to live in, empowered this foreman to hire the help necessary to carry on this phase of the work, and thereby had an interest in the work which was being done.

On the other hand William Etchison and his wife were interested in carrying on this work of feeding and lodging defendants' employees, and William's mother, a member of his family, was for two weeks under the eye of the foreman of the defendants in the car doing the very thing that William and his wife were employed to do and doing the very thing that defendants had undertaken to do and contracted to have done for their employees, that is to prepare and serve their meals and to prepare their sleeping places. The plaintiff was living with her son and it is true she received no wages either from defendants or from her son, yet as a member of that family she had a right to feel that she had an interest in carrying on the purpose so long as she was receiving her sustenance from one of the parties to the contract. She was engaged in the business adopted by the head of her family and that business was a matter that the railroad was engaged in and undertaking to carry out, and we think that her action and her conduct, known all the time to the man who had a right to say who should be in those cars to carry on that work, established the relation of an invitee of defendants' foreman to stay there and do what he knew she was doing. She had no knowledge of the rule and would have no cause to believe otherwise.

However, we are not compelled to place liability on the ground that she was an invitee, but place it upon the principle of law which controls and governs those who in their conduct and actions are carrying on a common purpose or a business in which they are mutually benefitted. The principle which we hold controls this case is announced in the case of Ryan v. John O'Brien Boiler

Works, 68 Mo. App. 148. In that case the servant of one company being sent to load a railroad car on arriving at the car found it yet loaded with merchandise belonging to another company which had to be unloaded before his task could be commenced. He voluntarily aided the servants of the defendant company in that case in unloading the car and was injured by reason of the negligence of one of defendant's servants. It was held that he was not a trespasser because he had a right to be there, that he was not a fellow servant of the servant he was assisting because that servant had no power to employ him, that he was not a mere licensee because of the fact that he was doing a thing which he had an interest in, that is, to get the car unloaded so that his work of loading might begin, and the court characterized his relationship as that of a licensee with an interest and held that such a relationship entitled him to the exercise of ordinary care from the servants of that company that injured him.

In the case of Pugmire v. Oregon Short Line R. Co. (Utah), 92 Pac. 762, cited with approval in Tinkle v. St. L. & S. F. R. Co., 212 Mo. l. c. 469, 110 S. W. 1086, a woman who was held out to the defendant as the wife of a keeper of a boarding car was injured. She was seen by the foreman of that boarding outfit to be cooking for the defendant's employees and acting as a substitute for the man with whom defendant had contracted to furnish the board, and what she did was with the knowledge and approval of the defendant, which received the benefit of her labor. It was held that she was not a trespasser or mere licensee, that she was rightfully in the car doing the work for the defendant as stated with its knowledge and acquiescence, and that she was entitled to the exercise of ordinary care on the part of defendant's servant in handling these cars.

It is held in the case of Welch v. Maine Cent. R. Co. (Me.), 30 Atl. 116, that one who has an interest in the work to be performed, either as consignee or servant of a consignee, *or in any other capacity,* and for his own convenience, or to facilitate or expedite his own work,

assists the servants of another, at their request or with their consent, is not thereby deprived of his right to be protected against the carelessness of the other's servants.

In Ohio it is held that a passenger on defendant's street railway whose only interest was in being transported on the car on which he was riding had such a mutual interest with the defendant company as to make him more than a mere volunteer when he undertook to and did help the defendant's servants in .pushing the street car back to a siding that another car coming from the other direction might pass it and thereby let his car proceed. The defendant was held liable for its servant's failure to. exercise ordinary care toward him while performing this task in which they were mutually interested. The court in passing on that case used the following language: ''The plaintiff in the court of common pleas was not a mere volunteer, within the meaning of the rule of law contended for by plaintiff in error, but, as a passenger on the north-bound car, was interested in having it driven to its destination. To this end it was necessary to pass the south-bound car. This could only be accomplished by pushing the north-bound car back upon the siding. In doing this, although it may not have been absolutely necessary for the passenger to assist the driver, it was a prudent and reasonable act, justified by the circumstances of the case; not a wrongful interference and intermeddling with business in which he had no concern. It was not, in fact or in law, an assumption of risk from the carelessness of the defendant or any of its servants.'' [McIntire Street Ry. Co. v. Bolton, 43 Ohio St. 224.]

In the case of Wright v. The London and North Western Ry. Co., 1 Q. B. Div. Law Reports (1876), 252, a plaintiff who had shipped a heifer assisted two porters in removing the box containing the heifer from the train and was injured by a negligent handling of the train. It was held that the company was liable for failure to use ordinary care toward him and a judgment was upheld on the ground that both the plaintiff and the

defendant had a mutual interest in the transportation and delivery of the heifer.

In the case of Eason v. S. & E. T. Ry. Co., 65 Tex. 577, it is held that one who has no interest in the performance of certain work for a railroad but volunteers to assist in such work assumes all the risks incident to his position, but that if he is not a volunteer but engaged at the request or with the permission of the railroad's agent in a transaction of interest as well to himself or his master as to the railroad company he is entitled to the same protection against the negligence of the company's servants as if he were at the time attending to his own private affairs.

In the case of Moore v. Wabash, St. L. & P. Ry. Co., 84 Mo. 481, we find the court in dealing with this question using this language (l. c. 487): "These facts would seem to bring this case within the rule founded in justice and necessity, and illustrated in many adjudged cases, that where one is not a mere licensee, but engaged with the consent of the railway company in a transaction of common interest to both, and is injured by a failure of the company to maintain its grounds and crossings and depot, in a reasonably safe condition, the railway would be liable." And that case is of further interest in that it holds that where by means of an inducement or invitation express or implied held out to the public by it, a railroad leads the public to use a crossing or way over its tracks in passing to and from its depot grounds, it is bound to keep such crossing or way reasonably safe for travel.

In our case can it not be said that the plaintiff was by implication induced or invited by Sayles the foreman in charge of this work train to remain there, and that her presence there and doing what he saw her do was satisfactory to him and to his master, and that the work she was doing was for the benefit of the men the defendants had undertaken to provide for?

It is true that a mere passive acquiescence by an owner in a certain use of his land by others involves no liability, but if he directly or by implication induces

persons to enter on and pass over his premises he thereby assumes an obligation that they are in safe condition. [Sweeny v. Old 'Colony and Newport R. Co., 10 Allen (Mass.), 368.]

The work the plaintiff was doing was in accordance with the intention and design that had been adopted and prepared and allowed to be used by the defendants; that is, she was helping to cook in the car which defendants had prepared for cooking purposes, helping to cook for the men defendants were undertaking to feed. [See, Carr v. Mo. Pac. Ry. Co., 195 Mo. l. c. 227, 92 S. W. 874; Bennett v. L. & N. R. Co., 102 U. S. 577, 26 L. Ed. 235; Brown v. Sullivan (Tex.), 10 S. W. 288; 3 Elliott on Railroads (2 Ed.), sec. 1249.]

The rule announced in Moore v. Wabash, St. L. & P. Ry. Co., 84 Mo. 481, that one is not a mere licensee when engaged with the consent of a railroad company in a transaction of common interest to both and is entitled to the exercise of reasonable care, has been followed in these cases: Lowenstein v. Mo. Pac. Ry. Co., 134 Mo.-App. l. c. 34, 119 S. W. 430; Nelson v. Wabash R. Co., 132 Mo. App. l. c. 693, 694, 112 S. W. 1017; and Ransom v. Union Depot Co. et al., 142 Mo. App. l. c. 371, 372, 126 S. W. 785.

The rule we invoke is closely related to that which holds a railroad company liable to the servant of one of its consignees, or to the servant of one to whom it furnishes cars knowing that such person's servants will use the cars in loading and the like, although there is no contractual relation existing between the injured servant and the railroad company. Such a case is that of Roddy v. Mo. Pac. Ry. Co., 104 Mo. 234, 15 S. W. 1112, wherein it is held (l. c. 237) that the work of loading the stone and of hauling it to the stone company's customers was of mutual interest and profit to the defendant railroad company and the plaintiff who was a servant of the stone company, and that the plaintiff was entitled to the exercise of ordinary care on the part of the railroad company in furnishing reasonably safe cars with which plaintiff was to do his work. [See, also: Rice v. Smith,

171 Mo. 331, 71 S. W. 123; Sykes v. St. L. & S. F. R. Co., 178 Mo. 693, 77 S. W. 723; Fassbinder v. Mo. Pac. Ry. Co., 126 Mo. App. 563, 104 S. W. 1154; and Hawkins v. Mo. Pac. Ry. Co., 182 Mo. App. 323, 170 S. W. 459.]

In the case of Tinkle v. St. L. & S. F. R. Co., 212 Mo. 445, 110 S. W. 1086, which was a boarding car case, the facts being somewhat similar to those in the case at bar, it was contended that plaintiff although not an employee was more than a mere licensee, and the court held that whether plaintiff was the servant of the defendant or a licensee she was at the time of the injury rendering services for the defendant's benefit, though it may not be directly with its knowledge and consent, and that it owed her the same duty it would an employee not engaged in operating the train but riding thereon on business of the company. That opinion cites the cases of Roddy v. Mo. Pac. Ry. Co., 104 Mo. 234, 15 S. W. 1112, and Pugmire v. Oregon Short Line R. Co. (Utah), 92 Pac. 762, both cited supra.

We therefore hold that the plaintiff in this case under the evidence if not an invitee by implication was certainly a licensee with an interest doing work under the very eye of the foreman which resulted in a benefit to his men and his employers, and that as such she sustained a relationship toward the defendants which required on their part the exercise of reasonable care in handling the cars in which they knew—or their foreman knew, whose business it was to know—that she was doing work which was directly for the benefit of the railroad.

For the reasons herein appearing, the trial court properly overruled defendants' demurrer to the evidence and the judgment is affirmed.

*Robertson, P. J.,* concurs.

*Sturgis, J.,* concurs, expressing these additional views: Defendants were clearly guilty of negligence in backing other cars violently against this work train. This negligence arose from a violation of their duty to the occupants of that car. Defendants' negligence would have existed had plaintiff not been in the car or injured

thereby and in order to hold the defendants liable. no new or different burden of watchfulness or care is imposed. While it is true that 'plaintiff, if a mere licensee, was injured by a neglect of duty which defendants owed to others rather than plaintiff, yet the duty was there and was violated; and while the duty to protect this car and its occupants did not and perhaps could not primarily arise because of plaintiff's presence in the car, yet such duty being present and arising primarily toward the other occupants of the car is not wholly to be ignored in fixing liability for a neglect of such duty resulting in injury to a licensee.