# J. L. SHAFER, Respondent, v. ST. LOUIS, SAN FRANCISCO RAILWAY, COMPANY, Appellant.

### Springfield Court of Appeals, January 18, 1919.

1. **PLEADING**: Negligence: Specific Allegations. Since negligence is a violation of some duty owed by defendant to plaintiff, the petition should specify what duty or obligation was violated and a petition is defective which fails to disclose whether plaintiff relies on the duty of a carrier to a passenger or of a master to a servant.

2. **INTRUCTIONS**: Negligence on Two Theories. An instruction which predicates negligence both on the relation of passenger and carrier and master and servant is confusing and misleading.

3. ———: Essential Facts. An instruction based on the relation of master and servant, when such relation is in issue, should not omit facts essential to create that relation.

4. **CARRIERS**: Injury to Passenger After Leaving Train: Instruction. In passenger's action for injuries while aiding brakeman in unloading freight at brakeman's request made while passenger was on station platform, instruction as to railroad's duty in management and operation of train with highest degree of care was misleading; the negligent act causing injury having no connection with operation and management of train.

5. ———: Injury to Passenger While on Platform: Assisting Brakeman in Unloading Freight. Where passenger, after leaving train and while on platform, was requested by brakeman to help in unloading a heavy barrel from car, railroad was not liable, by reason of the relation of carrier and passenger, for injuries sustained while giving such assistance.

6. ———: ———: ———. Where passenger, after leaving train and while on platform, helped brakeman to lift a heavy barrel, railroad was not liable for injuries received while so doing, on ground of an emergency in that passageway on platform was obstructed, where another brakeman and conductor were near by to render help if needed, and it would have been but a short time until obstructions were removed.

7. ———: ———: Assisting Brakeman: Duty of Conductor. Where passenger on platform was requested by brakeman to help in lifting a barrel, conductor was not required to forbid passenger to give such help where there was no inherent danger in the work and no reason to anticipate danger.

8. ———: Assisting Brakeman: Relation of Parties: Volunteer. Where brakeman requested passenger on platform to help him in lifting barrel, passenger, in rendering such help, was not an employee, though conductor, having authority in cases of emergency to employ extra help, might have heard request without objecting, but was mere volunteer, and could not recover against railroad for injuries received through brakeman's negligence while lifting barrel.

Appeal from Jasper County Circuit Court.—*Hon. J. D. Perkins,* Judge.

AFFIRMED.

*Frank L. Forlow* for appellant.

*R. M. Sheppard* for respondent.

STURGIS, P. J.—Suit for personal injuries in which defendant appeals from an adverse judgment. The question is not as to plaintiff's injury but as to defendant's libility therefore and incdentally as to whether the instructions given submit defendant's liability on a proper theory.

The immediate cause of plaintiff's injury was that he was assisting a brakeman of defendant railroad in unloading a barrel of Coca Cola, weighing some four hundred and fifty pounds, from a freight car onto the platform at the station of Wardell, Missouri, and in so doing the brakeman failed to support his side of the barrel letting it slip and fall, catching plaintiff's hand against the car. This act of the brakeman is alleged to have been negligent and careless. The train in question was a mixed train and had a few minutes

previous stopped at the depot to let off passengers and unload local freight. The plaintiff was one of the passengers who got off the coach or caboose and the car from which this freight was being unloaded was the next car forward. When plaintiff had alighted on the platform he walked forward toward the depot and was about to pass the door of the freight car from which the brakesmen were unloading the barrel. One brakeman was in the freight car and the other on the platform with the barrel at the door ready to be lifted out. The brakeman on the platform requested plaintiff, who was a brakeman at a nearby town and well acquainted at Wardwell, to help him unload the barrel, which plaintiff did an was injured as stated in so doing.

The petition is so drawn as not to indicate with clearness on what theory of defendant's duty to plaintiff he bases a right of recovery. Since negligence is a violation of a duty or obligation owed by the defendant t othe plaintiff, it is important to know what is the nature of such duty or obligation and why it exists. [20 R. C. L,. section 7, page 10; 29 Cyc. 419.; Bindbeutal v. Street Railway Co., 43 Mo. App. 463, 470.]

One cannot be said to have been guilty of negligence in the legal sense unless he has failed to do that which it was his duty to have done or which, under the circumstances, he could reasonably have been expected to do [Boettger v. Iron Co., 124 Mo. 87, 101, 27 S. W. 466.]

The petition designates the relationship of plaintiff to defendant at the time of this injury as that of a passenger and says that while plaintiff was yet a passenger he undertook to assist defendant's servants and employee to unload this freight. This, of course, is on the theory that plaintiff had not yet left defendant's platform and depot grounds after alighting from the train and, in the instructions given, the jury was told that the relationship and liability of carrier and passenger continued as long as the passenger was reasonably leaving the train and premises. The petition also alleges that plaintiff assisted in unloading this freight at the special instance and request of defendant's agent, ser-

vant and employee, not designating which or whom except that it further alleges that in so assisting in this work, plaintiff did so as directed by the said agent, servant and employee, and while so doing the defendant's agent servant and employee negligently turned loose the barrel they were lifting out of the car. Nowhere does plaintiff state that he became an employee or servant of the defendant in doing this work.

The instructions given for plaintiff follow the petition in these respects requiring the jury to find, amoung other things, that plaintiff was a passenger on defendant's train and was on the platform provided for passengers to alight when he was requested by defendant's agent and servant to assist in unloading the barrel; and further defining the degree of care owned by plaintiff to defendant, if he was a passenger as defined by the instructions as being the highest degree of care. In plaintiff's brief and argument, however, he takes the dual position that plaintiff was when injured a passenger and entitled to care and protection as such and that he became a fellow servant with the brakeman in unloading the barrel and that defendant is liable for the negligent act of his fellow servant.

At the trial the question most mooted was whether the conductor of this mixed train knew of the brakeman's request to plaintiff and by silence permitted plaintiff to comply with such request. Plaintiff's evidence is that the brakeman on the platform first requested one Malone (calling him "big boy"), who was standing nearby, to help him lift the barrel down and that Malone said there is a "big boy" (meaning plaintiff) get him to help; that the brakeman then said to plaintiff, "Help me lift this barrel down" and plaintiff did so. Plaintiff says the conductor was standing near and could easily have heard and seen what was said and done, but says that such conductor was getting some way bills signed and in no way indicated that he did hear what was said other than being in hearing distance. The conductor testified that he was busy with the way bills; did not hear the brakeman's request and knew nothing

of the matter till it was over and plaintiff's fingers hurt. The whole incident, it seems, only lasted a moment. All agree that the conductor, if he did hear and see what was said and done, paid no attention by word or act till the accident happened.

The only purpose of this evidence, and this is shown by the instructions as well, was to show that if the brakeman had no authority to make plaintiff an employee by requesting him to assist in unloading this freight, the conductor's knowledge and acquiescence had such effect. To this extent at least the case was tried on the theory that plaintiff was an employee as well as a passenger.

Plaintiff's principal instruction is clearly erroneous on this theory, for it clearly permits, if it does not that all the jury need find is that the plaintiff was requested to do this work by defendant's agent, servant and employee who assisted him in the work and directed him how to do ie, to-wit: the brakesman. In other words the instruction does not require a finding that the conductor knew of and permitted the plaintiff to assist in this work at the brakeman's request.

Plaintiff's second instruction, telling the jury that plaintiff was a passenger while on the platform in the resonable act of leaving defendant's train and premises, as well as while on the train, and that during such time defendant owed him " the duty of *managing and operating its said train* with the highest degree of care" and is liable to plaintiff for any omission of such care resulting in his injury, is also erroneous. It is certainly a far cry to say that the alleged negligent act of the brakeman had anything to do with the management and operation of the train, especially as connected with plaintiff's being on the train as a passenger as therein stated. This instruction is misleading to say the least.

This instruction leads us to further conclude that defendant's being a passenger either on the train or platform has nothing to do with the negligence complained of. Plaintiff was not doing the thing a passenger

is supposed to be doing by leaving the train and proceeding along the platform in an endeavor to leave plaintiff's premises, nor was he transacting any business in which he had an interest. Had plantiff been injured by some defect in or obstruction of the platform, or had the brakeman let the barrel fall out of the car door against him as he was passing along, the law of passenger and carrier would apply. Here, however, the plaintiff turned aside from his own course and business to engage in work in which he had no interest as a passenger or otherwise. Whether he became an employee of the defendant will be noticed later, but in any event the transaction which injured him was a joint act of his and the brakeman in which he voluntarily engaged and had nothing to do with his being a passenger. Had plaintiff been a mere idler on the platform as was the first man the brakeman asked to help him, his relationship to this unloading of the barrel would be the same. As said in Sherman v. Railroad, 72 Mo. 62, 65:

"It is plain, however, from the testimony, which we have inserted at length, that the plaintiff was not injured simply by reason of his being carried as a passenger in a dangerous position, in violation of the rules of the company, but in consequence of the order of the brakeman to him to adjust some loose boards on one of the cars in the train, in the execution of which order he was thrown from the train and injured. This order of the brakeman was clearly the proximate cause of the injury."

To overcome the above conclusion the plaintiff sought to show that the platform at this point was somewhat obstructed by barrels or boxes, leaving a passage way only six feet wide, and that the Coca Cola barrel, being unloaded from the car door, was a menace to any one passing through there. The evidence, however, does not sustain this contention so as to create what is termed an emergency allowing a passenger or other person to hold the defendant liable for the risks attending his act in helping remove the obstruction.

Even if plaintiff could not safely pass while this barrel was yet in the car door, which seems somewhat doubtful, yet it is shown that another brakeman was in the car and the conductor was nearby to render help if needed. At most it would have been but a short time till the barrel was lifted down even if plaintiff could not have departed another way with slight inconvenience. Plaintiff's act must be held purely voluntary and prompted by a commendable spirit of willingness to lend a helping hand.

Nor do we believe that even if the conductor was a guardian of plaintiff's safety and owed him a high degree of care in this respect while on the platform, he was called on to forbid plaintiff's helping the brakeman lift this barrel to the platform or rebuke the brakeman for asking him to do so. Why should the conductor anticipate danger when there was none except from the brakesman's negligence, and he certainly could not anticipate that the brakeman would be careless any more than the plaintiff would be. The plaintiff was a strong, capable man accustomed to lifting, and the act he undertook was not attended with any lurking or inherent danger and was through with in a moment.

The last question presented is whether plaintiff became a servant of defendant or was a mere volunteer. If plaintiff was a volunteer then the doctrine of fellow servant does not apply and the defendant is not liable for mere negligence. "The duty and only duty as a rule is to refrain from doing the intruder any willful injury." [3 Elliott on Railroads, section 1305.] In this same section this author further says:

"A person cannot make himself the employee of a railroad company by his own act, for the relation of master and servant cannot exist in such a sense as to create the duty of employer to employee without the express or implied assent of both parties. . . . If that relation does not exist one who assumes to perform service for the company must be regarded as a mere volunteer without any right whatever to insist that the

company owes him a duty as master or employer. Duty cannot exist where there is no relation between the parties creating it. The overwhelming weight of authority sustains the doctrine that a volunteer cannot charge a railroad company with the duty of an employer. If there is no authority to employ the persons who undertake to render service then the general rule will not apply. *Ordinarily, trainmen have no authority to employ servants for the company.* There may be cases where the circumstances are such as to confer authority but such cases are exceedingly rare.''

In Railway v. Finnell's Admr. (Ky.), 57 L. R. A. 266, this is said:

''One who has no interest in the performance of the work which he undertakes, whether of his own volition, or at the suggestion of others engaged in the work, and merely to assist them in its performance, is a volunteer, and assumes all the risks of the employment, and cannot recover for injuries occasioned by an accident happening through the neglect of those with whom he is acting.'' [See also Lumber Co. v. Nicholson (Ky.), 164 S. W. 1. c. 86, and Railroad v. West (Ga.), 67 L. R. A. 701.]

In Sherman v. Railroad, 72 Mo. 62, the court held that a brakeman had no authority to create the relation of master and servant by requesting a person to perform service for the company and one who did so on such request could not recover for negligence. In that case it was said that the conductor did not know of or consent to the service being rendered. In Hall v. Railroad, 219 Mo. 553, 118 S. W. 56, the brakeman requested and directed the party injured by negligence to do certain work of the railroad in the doing of which he was injured and there was evidence showing that the conductor knew of this and the court held that since *neither the conductor nor brakeman* had authority to employ such person, the act of the brakeman in directing him to do the work with the conductor's mere knowledge did not make him an employee and the only duty the defendant owed him was not to injure him

after his peril was known. In Stringer v. Railroad, 96 Mo. 299, a brakeman invited plaintiff to ride on an engine and all the persons running and managing the engine knew of this, yet the court held him a trespasser.

It is held in Ryan v. Boiler Works, 68 Mo. App. 148, 152, that a servant of another. party (and this would be true of one not a servant of anybody) who at the request of defendant's servants assists them in doing defendant's work is not a fellow servant of such servants as they have no common master. Nor is this plaintiff an invitee with an interest as was the basis of defendant's liability in Ryan v. Boiler Works, supra, and in Etchison v. Lusk, 195 Mo. App. 188, 200, 190 S. W. 345.

Granting that this conductor by virtue of his position had authority in cases of emergency to employ extra help and a person so employed is a servant and employee of that railroad (1 Elliott on Railroads, section 221a and section 302) yet there was no such emergency existing as to call such authority into action; nor is there any sufficient showing that the conductor exercised this authority 'by merely showing that he overheard the request of the brakeman and saw plaintiff's compliance therewith. Nor did plaintiff, in doing this work, rely on any apparent or implied authority of the conductor by virtue of his position as the inducing cause of doing this work. In Georgia Pacific Railway v. Propst, 85 Ala. 203, 4 So. 711, a person employed as watchman was riding on a freight train by permission of the conductor and while so doing the conductor requested him to do some work as a brakeman by saying: "Will, come here and make this coupling for me," in doing which he was injured. The court said:

"More is essential than a mere order or request to couple cars at one time and place, or doing a single act to constitute an employment within the scope of the implied authority of the conductor. It must be to render service to some extent continuous in its nature. On

the case made by the complaint, it is incumbent on the plaintiff to show that he left his regular employment at Patton Mines to act as brakeman on a trip down the road by order or request of the conductor, or while on the train was employed by him to render service as brakeman on the trip in place of a sick or missing brakeman. This the evidence disproves. On the testimony of the plaintiff himself, he has failed to show, prima facie, a lawful and binding employment which brought him under the control of the conductor, or subjected him to his orders. If he had previously acted as brakeman, it was of his own volition. He occupied at Berry Station merely the position of a *passenger* or *bystander,* who attempted to make the coupling at the request of the conductor as matter of accommodation. The evidence, as now shown by the bill of exceptions, which differs in material respects from the testimony on the first trial, does not entitle the plaintiff to recover on either count of the complaint.''

As the most that is shown here is that the brakeman invited plaintiff to assist in doing this work taking but a moment and that the conductor might have heard and observed it and did not object or protest, there being nothing calling for his doing so, the relationship of master and servant did not exist and defendant cannot be held liable for the brakeman's negligence—granting that egligence of the brakeman was shown, which we need not decide, but refer to Neth v. Delano, 184 Mo. App. 652, 171 S. W. 1.

The case must, therefore, be reversed.

*Farrington* and *Bradley, JJ.,* concur.

## Concurring Opinion.

FARRINGTON, J., concurs, expressing the following views:

The record of the case as trued clearly shows that the plaintiff was not at the time of his injury a passenger, an employee, an invitee of the defendant, nor was he a licensee coupled with an interest in helping to

unload the freight. He occupied clearly the relation of a volunteer or mere licensee, to whom the defendant owed no higher duty than to not wantonly injure.

The various relations and liabilities of defendant in similar cases have been reviewed by this court in the case of Etchison v. Lusk, et al., 195 Mo. App. 188, 190 S. W. 345.

I concur in the opinion rendered by STURGIS, P. J.