## ST. LOUIS & S. F. R. CO. v. BAGWELL.

No. 1609.    Opinion Filed March 12, 1912.

Rehearing Denied June 18, 1912.

(124 Pac. 320.)

**MASTER AND SERVANT—Injuries to Servant—Existence of Relation.**
One who, at the request of a conductor in charge of a freight train, an emergency existing reasonably requiring such assistance, temporarily assists in the work of the carrier in the unloading of a safe from one of its cars, the regular crew not being reasonably able to unload same, is, for the time being, the servant of the defendant and entitled to the same protection as any other servant.

(Syllabus by the Court.)

*Error from District Court, Hughes County;*
*John Caruthers, Judge.*

Action by J. B. Bagwell against the St. Louis & San Francisco Railroad Company. From a judgment for plaintiff, defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt,* and *Fred E. Suits,* for plaintiff in error.

*Langston, Hicks & O'Neill,* for defendant in error.

WILLIAMS, J. It is claimed by counsel for plaintiff in error that the petition does not state a cause of action because it shows that the plaintiff was a mere volunteer for the work in which he was engaged at the time he received his injury.

Under the allegations of the petition the plaintiff was engaged in defendant's work at the request of the conductor in charge of the train, and, although it may be said that his employment was for mere temporary purposes, still, being in the defendant's employ at the request of its servant or the conductor who was in charge of the train, an emergency existing reasonably requiring such assistance in the work of the carrier in the unloading of a safe from one of its cars, the regular crew not being reasonably able to unload same, he was not a trespasser, but, for the time being, the servant of the defendant.

In *Aga v. Harbach,* 127 Iowa, at page 145, 102 N. W., at page 833, 109 Am. St. Rep. 377, 4 Ann. Cas. 441, it is said:

"It may be conceded that, generally speaking, a servant who is engaged to perform a given labor is not authorized to bind his master by the employment of a substitute or assistant. The relation of the master to a servant is one involving both responsibility and risk, and is not to be imposed by the act of another without authority or consent, express or implied. But in most lines of business the master cannot always remain, in person or by vice principal, in immediate supervision of the servant, and it not infrequently happens that some unforeseen contingency arises rendering it necessary, in the master's interest, that the servant have temporary assistance. In many such cases it has been held that the servant has implied authority to engage such temporary service, and that the substitute or assistant, if not in the law the

employee of the master, is at least entitled to the same measure of protection as is the servant or agent upon whose request he rendered the assistance."

In *Marks v. Rochester Railway Co.*, 146 N. Y. 181, 40 N. E. 782, in the opinion by Andrews, C. J., it is said:

"The complaint alleges that the plaintiff was engaged in assisting in the management of the car under the direction of the driver and was placed on the rear platform to drive the horse, and while so engaged was crowded from the platform by persons who were leaving the car and was thrown under the wheels and injured, and that the injury was caused by the negligence of the defendant. The only specification of negligence contained in the complaint is that the platform on which the plaintiff was stationed for the purpose of driving the horse was an unsafe and unfit place upon which to put a boy of his age to perform the duty imposed upon him. The trial judge submitted to the jury two questions, first, whether there existed such an emergency at the time as to authorize the driver of the car to employ outside assistance to get the car back to the switch; and, second, if the jury found that such an emergency existed, whether he was negligent in placing a young boy under the circumstances upon the platform to drive the horse. * * * It is not claimed that the driver had any general authority to employ servants for the defendant. If he had authority to employ assistance under the circumstances of the case, it was an authority outside of the general scope of his employment. Clearly he had no authority, express or implied, to call upon bystanders to assist him in the discharge of any service which he himself could reasonably perform. If third persons undertook upon his solicitation and for his convenience to assist him in extricating the car from the blockade, when he could have accomplished the work himself, no authority to employ assistance could be implied. Such an implication could only arise when, in view of all the conditions, the driver could not himself without assistance, having a proper regard for the safety of passengers and the care of the car, have undertaken to take the car back to the switch. It is obvious that the driver could not at the same time have managed the brake and driven the horse. The driver of the other car had his own car and the horse to look after, and it does not appear that there was any other employee of the company in the vicinity to whom the driver of the car which was to be moved could have applied for assistance. While the evidence is not very direct or satisfactory as to the necessity for aid, we think that question was properly submitted

to the jury. The defendant gave no evidence upon the point. The conduct of the driver indicates that, in his opinion, assistance was necessary, and the jury might reasonably have reached the conclusion upon the evidence before them, in the absence of any contradictory evidence, that there was an emergency which gave to the driver authority to call in outside aid on the occasion. The authority of a servant is not in all cases confined to the rendering of personal service. In every business and employment there are exigencies which are not anticipated and which require a servant to act, in the absence of the principal, for the immediate protection of his interests, and he may do things in his interest when the emrgency arises which transcend his usual authority, and they will be deemed to have been authorized. The jury having found that such an emergency existed in this case, the employment of the plaintiff to drive the horse was the act of the principal, and, if his employment in this·service directly by the principal would have been an act of negligence, his employment by the driver, acting for the time being in place of the master, was a negligent act imputable to ·the defendant. The service which the plaintiff was called upon to render was unquestionably intended to be a gratuitous service. He went upon the car in compliance with the request of the driver. If the service required of the plaintiff was a dangerous one for a boy of his age, from which personal injury to him might reasonably have been anticipated, the defendant might justly be chargeable if injury happened which was the natural consequence of the employment. The plaintiff, by reason of his youth and inexperience, might not appreciate the risk, and he would not be held to the exercise of the same discretion and judgment in entering upon the service as would be required of an adult."

See, also, to the same effect, *Sloan v. Railway Co.*, 62 Iowa, at page 736, 16 N. W., at page 334; *Johnson v. Ashland Water Co.*, 71 Wis. 553, 37 N. W. 823, 5 Am. St. Rep. 243.

In *Street Railway Company v. Bolton*, 43 Ohio St. 227, 1 N. E. 335, 54 Am. Rep. 803, it is said:

"The plaintiff in the court of common pleas was not a mere volunteer within the meaning of the rule of law contended for by plaintiff in error, but, as a passenger on the north-bound car, was interested in having it driven to its destination. To this end it was necessary to pass the south-bound car. This could only be accomplished by pushing the north-bound car back upon the siding. In doing this, although it may not have been absolutely necessary for the passenger to assist the driver, it was a prudent

and reasonable act justified by the circumstances of the case, not a wrongful interference and intermeddling with business in which he had no concern. It was not, in fact or in law, an assumption of risk from the carelessness of the defendant or any of its servants. The law in this case is well stated in *Wright v. London & N. W. R. R. Co.,* 1 Q. B. Div. 252. That case was this: 'The plaintiff sent a heifer (which was put in a horse box) by defendants' railway to their P. station. On the arrival of the train at the station, there being only two porters available to shunt the horse box to the siding, from which alone the heifer could be delivered to the plaintiff, in order to save delay he assisted in shunting the horse box, and while he was so assisting he was run against and injured through a train being negligently allowed by the defendants' servants to come out of the siding. There was evidence that the station master knew that the plaintiff was assisting in the shunting and assented in his doing so. *Held,* affirming the decision of the queen's bench, that the plaintiff was not a mere volunteer assisting the defendants' servants, but was on the defendants' premises with their consent for the purpose of expediting the delivery of his own goods, and the defendants were therefore liable to him for the negligence of their servants, according to the principle of *Holmes v. North Eastern Ry. Co.,* L. R. 4 Ex. 254; 6 Ex. 123.' "

See, also, *Haluptzok v. Great Northern Ry. Co.,* 55 Minn. 446, 57 N. W. 144, 26 L. R. A. 739; *Barstow v. Old Colony R. Co.,* 143 Mass. 535, 10 N. E. 255.

It follows that the petition stated a cause of action, and the demurrer to the evidence, as well as the motion of the defendant for a directed verdict in its favor, were properly overruled.

There is no merit in the other assignments of error under the record.

TURNER, C. J., and HAYES, KANE, and DUNN, JJ., concur.