## W. H. Neill Company v. Rumpf.

(Decided June 11, 1912.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, First Division).

1. Master and Servant—When Relation Exists.—Where a foreman, in the prosecution of his master's business with which he was entrusted, in an emergency called to his assistance a third person, who acted under his directions, the foreman had implied authority to procure such assistance as the emergency required, and such third person is not a volunteer, but a servant, although no compensation was promised or expected.

2. Master's Liability for Injuries to Servant—Tools, Appliances and Methods of Work.—It is the duty of the master to exercise ordinary care, to furnish tools and appliances adequate and sufficient for the reasonably safe conduct of his business, and to adopt and use reasonably safe methods of work; and, upon his failure so to do, he is responsible for resulting injury to an employe, who is himself without fault.

WILLIAM FURLONG for appellant.

EDWARDS, OGDEN & PEAK and JAMES W. GARRISON for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Affirming.

W. H. Neill Company is a private corporation, engaged in the mill supply business in the city of Louisville. It deals in belts, pulleys, wheels and all character of supplies used in the mill business. It is not a manufacturer, but simply a dealer. Its storeroom is situated on the north side of Main street between Fifth and Sixth, and runs back to an alley. The store is lighted in the rear by a large window. Harry Rumpf was a teamster, in the employ of A. H. Figg, who conducts a teaming and transfer business in the city of Louisville. About July 15, 1910, the said W. H. Neill Company called upon Figg to haul a heavy drill press from its store room and deliver it to the purchaser. This press weighed 1,500 pounds; was about two feet square, and about six feet long. It was standing near the center of the store room near the rear end, near the alley, in an upright position. It became necessary to put the press upon its side, in order that it might be rolled out to the door and loaded. A crane, to which a block and tackle was attached, was used to assist in laying the drill press on its side. It seems that the employes about the place were not able to handle this press, and additional help was needed. The evidence shows that two outside men were called in and Rumpf also assisted in lowering the press. In some way, while they were attempting to let it down upon its side, it fell, and in its fall, caught and crushed Rumpf's hand. He sued the company for damages, alleging that his injury was due to the negligent manner in which the machinery, to-wit, the crane used in lowering the press, was operated; and also, that the boss, in charge of the work of lowering it, caused it to fall by improperly prizing it at the base. The plaintiff proceeded upon the idea that he was employed to assist in this work.

The defendant denied liability; and denied that it had employed the plaintiff. Denied that it was under any duty or obligation to protect him, except to avoid injuring him after discovering his peril; and pleaded that the work of lowering this press on its side was so simple, plain and obvious that anyone of ordinary understanding and common experience in the handling of heavy articles of this character, could not fail to see and

know that if it should fall, injury would necessarily result to those who failed to get out of its way.

The case was submitted to a jury upon the issue joined, with the result that plaintiff recovered a verdict for $1,200. Judgment having been rendered thereon, the defendant appeals, and seeks a reversal primarily upon the ground that the court erred in refusing to peremptorily instruct the jury to find for it, at the conclusion of the evidence for the plaintiff.

The appellant's whole defense in this case, is rested upon the theory that appellee was a volunteer, and, as such, he assumed the risk and is not entitled to recover anything because of the injury sustained under these circumstances. Appellee insists, first, that he was not a volunteer, but that he was acting under the direction of the foreman, Frank, who had ample authority to employ such assistance as was necessary to carry on the business in which appellant was then engaged, and that in the exercise of such authority he did employ appellee, or at least requested him to assist in the work, and that under these circumstances, if appellant failed to furnish him a reasonably safe place in which to work or reasonably safe and suitable appliances with which to work, and injury resulted because of such failure, appellant is liable. Appellant introduced no evidence whatever, but insists that the evidence of appellee showed that he was a volunteer. Appellee testifies as to his own connection with that work as follows:

"Q. What did Frank say to you about helping, if anything?

"A. You mean after I got hurt?

"Q. No, before you got hurt.

"A. Oh, he just says go back there, you all hold it up a little bit.  *  *  *

"Q. Who else did Frank ask to assist in getting the drill out? Who else was right there?

"A. There was Fahey and Kennedy and Muir and Sullivan and me.  *  *  *

"Q. What part of the work did you do, where were you standing?

"A. I was in the back.

"Q. Who placed you there?

"A. Frank.

"Q. Tell the jury what, if anything, Frank told you to do?

"A. Well, Frank told me—he says, you go over there by that machine on the corner. When I got over there they were already cranking and hoisting and it got kind of twisted. They had to change the ropes the third time and Frank got under there with a big crowbar and gave it a turn and it came right over on my hand. * * *

"Q. When you got the drill press over, leaning something like I indicate by this book, what did Frank then do?

"A. He says, wait a minute now. He seen it was going to fall. Then they got around this way and stopped it.

"Q. When they stopped it what did Frank do?

"A. He took the crowbar and turned it around when it fell over."

Frank himself testified that the accident was caused in this way:

"Q. What work did you do in connection with it, actual work?

"A. The actual work I did, I had a crowbar under the edge of the drill press trying to shove the base of the press.

"Q. So that you would let it come down directly into the aisle and thereby it could be moved on out through the store.

"A. Well, I don't know, I don't recollect clearly just what I was doing. The only thing that I do recollect clearly is the fact that I had a crowbar under the end of the press in order to shove the base.

"Q. Had you shoved the base when it fell?

"A. That is what caused it to fall..

"Q. You shoving the base?

"A. Yes, sir."

Thus, from the evidence of appellee and of Frank, the foreman, it is plain that appellee, along with the other men, was directed to go around and help hold up the press, while Frank prized at its base, and while the men were attempting to hold it, and he prizing at its base, it fell, and appellee was injured.

Appellee testified that he was not expecting any pay for this work, that he had theretofore done similar work when articles were being moved there and had received no pay for it, but that it was the custom of the officers of the appellant company to give him tips at times. The question of compensation cannot enter into the case, so

as to militate against appellee's right to recover, if in fact he was, at the time of his injury, acting at the request of or under the direction of appellant's foreman, who had charge of the work of moving out this press. He testified that he was so acting, and there is no evidence to the contrary. If then, while so acting, he was injured through the negligence of appellant in failing to furnish a reasonably safe place in which to work, or suitable appliances and sufficient labor with which to handle the press, appellant is in no position to escape liability, simply because appellee was not expecting compensation for his work.

It is next suggested in brief, that, if Frank did direct appellee to assist in this work, he was without authority to do so. The evidence does not support or justify this statement. He was there, in charge of the men engaged in removing the press. He did not have a sufficient force on hand, and he found it necessary to call in or procure additional help. It is conceded that he sent down by some one, perhaps appellee, and procured the services of two additional men, and, with the help of these and appellee, attempted to get out the press. Having been placed there in charge by the company, and being entrusted with the management of shipping this press, appellant will not be heard to say that he was without authority to get such assistance, as the emergencies of the case required. He says that he had no authority to employ help, but admits that such had been the custom, for many years, in the conduct of their business. Upon consideration of the whole record, we are satisfied that Frank, who had charge of this work, was clothed with authority to employ such assistance, in emergency cases, as was needed, and that, in the exercise of this authority, he directed appellee to assist in the work.

The only remaining question is: Was appellant guilty of negligence in attempting to lower this press in the way and manner in which it did? Frank was familiar with the crane, and knew that too much weight, thrown upon one side, would cause it to fall over; for, he says, if you pull from the side, you would be very apt to pull the machine over. Fahey testified, that it had previously fallen over in Frank's presence. Sullivan testified that he had warned Frank against its use upon this occasion, but that Frank insisted that it was all right. From this evidence, it may be fairly assumed that Frank

was familiar with the operation of this crane, and the dangers attendant upon its use. Appellee was not familiar with the operation of this crane, had theretofore had no experience with it and knew nothing of the dangers attendant upon its use. He was not advised that it was liable to fall, upon being subjected to a lateral strain, but, in ignorance of these facts, took his station along side the press, where he alleged he was directed to go by Frank, and was standing with his back toward the crane and press, attempting to prevent the press from turning over sideways, at the time it fell. The falling was, as stated by Frank, due to the prizing at the base of the press with the crowbar, thus evidently exerting a lateral pressure upon the crane, causing it to topple over, and with it, the press. From the evidence, one of two things is apparent: Either the crane was not of sufficient capacity to hold the press, while it was being lowered; or else, the foreman, Frank, caused it to fall by improperly applying the crowbar to the base, thus throwing the weight upon one side and causing the crane to fall. Upon no other hypothesis, can the accident be accounted for. If it was produced by either of the causes above indicated, appellant would be answerable for the resulting injury. An employer is not required to furnish the best tools or appliances for conducting his business, but he must use ordinary care to furnish such as are reasonably suited for the purpose for which they are intended; and, if the tools and appliances, which he does furnish, are inadequate, or insufficient, to conduct the business with reasonable safety, and injury results, liability follows, if the servant has himself exercised ordinary care for his own safety. Again, it is the duty of the master to use ordinary care to adopt a reasonably safe method for conducting his business in order to protect his employes against injury, and a failure on the part of the employer to exercise such care, renders him liable for resulting injury to an employe, who is himself without fault.

The evidence in the case at bar fails to show that appellee was guilty of contributory negligence; but, on the contrary, it shows that he was acting under the immedate direction of the foreman, that he stationed himself as directed by the foreman, and was attempting to prevent the press from falling over. Under such circumstances, it was the duty of the court to submit to the

jury, under proper instructions, whether or not appellant was guilty of such negligence as would make it answerable in damages for appellee's injuries. The instructions, in appropriate terms, presented to the jury the issues as made by the pleadings and warranted by the evidence; and, as the verdict is, in our opinion, justified and sustained by the evidence, we see no reason for disturbing the judgment predicated thereon.

Judgment affirmed.