## Kentucky Lumber Company v. Nicholson.

(Decided March 12, 1914.)

### Appeal from Whitley Circuit Court.

1. Master and Servant—Volunteer—Master Not Liable for Injury to.—Where a third party, having no connection with the master's business, was injured while assisting at his request a subordinate employe, he cannot recover against the master when there was no emergency or other reason why the unauthorized employe should have secured the assistance.

2. Master and Servant—When Master Liable for Acts of Servant.—Where a servant, acting within the scope of his apparent authority, inflicts injury on a third person, the master will be generally liable for the wrongful acts of the servant.

3. Master and Servant—Volunteer—Unauthorized Employment.—A servant, when there is no emergency requiring prompt action, cannot bind the master by employments or requests made outside the line of his duties.

4. Master and Servant—Right of Master to Know Who Servants Are—Not Bound by Unauthorized Employment of Servant.—Employers of labor, except in cases of emergency, have the right to know whom they will be called upon to protect in the relation of servant and when this relation begins. Therefore, when a third party undertakes, as an accommodation or out of curiosity, to render some assistance to an employe who has no authority to engage or consent to his services, he assumes the risk of any accident that may happen due to the ignorance or even carelessness of the employe.

TYE & SILER for appellant.

W. R. HENRY, J. N. SHARP for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

The Kentucky Lumber Company operates a saw mill and manufacturing plant near the line of the Louisville & Nashville R. R. Company's tracks, and from its tracks a spur track runs into the grounds of the mill on which cars are put to be loaded and unloaded. The appellee, Nicholson, sustained personal injuries while assisting in the manner hereafter stated to throw a switch lever on this track, and in a suit to recover damages for the injuries so sustained there was a verdict and judgment in his behalf.

The petition states the cause of action thus: "That the defendant by its foreman directed this plaintiff to loosen a latch attached to a railroad or spur track switch so as to enable the defendant to use said switch in operating a railroad car in connection with its business; that the plaintiff, in obedience to said order and direction by its foreman, loosened said latch; and by reason of which he was knocked down against the ground by the lever of the switch  *  *  *. He says that to loosen the latch and operate the switch as the defendant was doing was highly and extremely dangerous, which was not known to the plaintiff, and could not have been known by the exercise of ordinary care and diligence; but was known to the defendant, or could have been known to it by the exercise of ordinary care and diligence.

"That the defendant's foreman was using a piece of timber in connection with the lever at the time complained of by the plaintiff, and that he was knocked down and against the ground by the lever of the switch and the said piece of timber used by the defendant's foreman."

The evidence shows that the wheels of a car standing on this spur track had in some way become fastened in the fixtures of the switch, and to get the wheels loose it was necessary that the switch should be thrown by the lever; that D. B. Bradley, whose duties as foreman of the planing mill did not require him to exercise any supervision or control over this track or the cars thereon, in passing by happened to see the situation and concluded to remedy it; that Nicholson, who had no connection whatever with the mill, had gone there to get a load of lumber; that while he was waiting for his lumber he saw Bradley out at the switch, and he went to where he was, without being invited to go, and without having any business there. After going to the place where Bradley was, he described what happened as follows:

"While I was there he was prizing on this lever and he asked me to loosen the latch for him. Q. State whether or not you knew there was any danger attached to that? A. I did not know of any danger at all. Q. Had you ever unloosened a latch or assisted in working a switch of that kind before? A. No. Q. What did Bradley say? A. He asked me to loosen the latch for him. Q. When you did that what occurred? A. I was hit. The piece of timber he had struck me in the head and this lever struck me in the side. The switch lever was made of iron and was used to work the switch with, and when you loosened the latch that lets the lever fly up."

Another witness testified that the car placed a strain on the switch and also on the switch lever, which made it dangerous to undertake to open it in the way Bradley was doing; that with this strain or weight on the switch when the latch that holds the lever was loosened it would cause the lever to fly up.

The evidence further showed that Bradley had no duties to perform in connection with the railroad track or switch.

Bradley says that as he was walking by the car on his way to the office he saw the condition in which the car and switch were, and, getting a stick four or five feet long, was trying to prize open the lever when Nicholson came up and asked him if there was anything he could do to help him, and he told him that he could throw the latch if he wanted to; that when he unloosened the latch the switch lever was thrown over and it knocked the stick out of his hand and the stick struck Nicholson.

There is no evidence whatever that Bradley had had any experience in opening the switch or in the kind of work he was doing when the accident happened, or that he knew it was dangerous to do what he was doing or to do what Nicholson was doing or that he was guilty of any negligence or carelessness in trying to remedy the trouble, although a railroad man testified that it was dangerous to undertake to relieve the trouble in the manner Bradley was attempting to do it.

If it should be assumed that it was a part of Bradley's duty as an employe of the company to try to repair the trouble caused by the car getting fastened in the switch, there is a total failure of evidence to show that it was necessary that this should be promptly done or that it was a case of emergency or that the protection of the property of the Lumber Company or the safety of life or

limb made it necessary that it should be done or that Bradley had any authority, either expressed or implied, to ask the assistance of Nicholson or that he was acting within the scope of his employment when he requested him to assist.

Under all the evidence Bradley was acting outside the scope of his employment and duties, and Nicholson, in assisting him, was purely a volunteer. No breach of duty to Nicholson was committed by the Company, nor was it or any person acting for it guilty of negligence resulting in his injuries.

It is attempted to bring this case within the rule laid down in Robards v. Bannon Sewer Pipe Co., 130 Ky., 380; South Covington & Cincinnati Ry. Co. v. Cleveland, 30 Ky. L. R., 1072, and New Ellerslie Fishing Club v. Stewart, 123 Ky., 8, in which it was held that where a servant acting within the scope of his apparent authority, inflicts injury on a third person, the master will be liable for the wrongful acts of the servant, but the principle announced in these cases has no application here, as there is no claim that Bradley purposely or intentionally or knowingly did or attempted to do Nicholson any injury.

The case of Neill Co. v. Rumpf, 148 Ky., 810, is also relied on as authority to support the judgment, but the facts of the two cases are so unlike that the Rumpf case cannot be regarded as controlling. In that case the Neill Co. called upon Figg, who was engaged in the transfer business, to haul a heavy press for it. Rumpf, a teamster in the employ of Figg, was sent to do the work. The case for Rumpf was put by this court upon the ground that the foreman of the Neill Co., who was in charge of the loading of the press which fell while it was being loaded, thereby injuring Rumpf, was acting within the scope of his authority in procuring the assistance of Rumpf in an emergency; that the foreman was authorized to get such assistance as the emergency of the case required, and that in the exercise of this authority he directed Rumpf to assist in this work. It was further found that the accident to Rumpf was caused by the negligence of the foreman or by the insufficiency of the implements used to handle the press, and that under the circumstances Rumpf was to be treated as a servant of the Neill Co., and it was charged with the duty of exercising toward him that degree of care required in the relation of master and servant.

We think this case is controlled by the principles laid down in Louisville & Nashville R. R. Co. v. Pendleton, 126 Ky., 605, and Southern Railway in Ky. v. Pope, 133 Ky., 835. In the Pope case, which is very much like this one, it appears that one Fisher, who was acting as the assistant to the hostler of a yard engine, went outside the line of his duties in undertaking to run the engine. While so engaged he called on Pope, who was cleaning ashes out of the engines, to act as brakeman and assist him in coupling the engine to a car. While engaged in this work Pope was killed in attempting to couple the engine to the car. In holding that his administrator could not recover for his death, the court said, in speaking of Fisher, that "he had been acting as hostler's helper, but there is nothing in the record to show that he had been authorized to act himself as helper or engineer. Fisher, being himself without authority to act as hostler, could not issue orders to Pope to act as helper. If Pope chose to obey these unauthorized orders, he did so at his peril and assumed all the risk involved in the labor which he voluntarily undertook."

If, under the circumstances of this case, the appellant Company could be made responsible, there is no limit to the liability to which employers might be subjected by the willingness of meddlers or volunteers to assist some subordinate employe acting outside or even within the line of his duties, at a time when there was no emergency requiring the assistance of outsiders. Employers of labor, except in cases of emergency, have the right to know whom they will be called upon to protect in the relation of servant, and when this relation begins, therefore when a third party undertakes as an accommodation or out of curiosity to render some assistance to an employe, who has no authority to engage or consent to his services he assumes the risk of any accident that may happen due to the ignorance or even carelessness of the employe.

For the reasons indicated we think the jury should have been instructed to return a verdict for the Lumber Co. And if there is another trial and the evidence is substantially as it appears in this record, the court will direct a verdict for the defendant.

Wherefore, the judgment is reversed, with directions for a new trial in conformity with this opinion.