### O'NEIL, Receiver, v. VIE.

No. 12334—Opinion Filed Nov. 27, 1923.

**1. Master and Servant—Injuries to Servant—Negligence.**

The mere fact that the servant received injury does not establish, even prima facie, the negligence or breach of duty of the master.

**2. Negligence—Reasonable Care.**

Whether or not a defendant is guilty of negligence depends upon the question whether he exercised reasonable care under the circumstances existing at the time; not whether he had done everything which it was possible to do in the light of every possible danger that might arise.

**5. Same—Evidence.**

Negligence must be shown by evidence, and the evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury in the sense of more likely to cause an injury than not, but the likelihood must be such that a reasonable person could foresee that injury would result in the ordinary course of things. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results.

**4. Master and Servant—Liability for Injuries to Servant—Mere Accidents.**

For accidental injuries, or such as occur without any act of negligence on the part of the master, the master is not liable to the injured servant.

**5. Animals—Liability of Owner for Injuries by.**

The criterion usually adopted in determining the liability of the owner for injuries inflicted by a domestic animal is whether he could have reasonably anticipated the occurrence of injury.

**6. Master and Servant—Relation—Assisting Train Crew in Emergency.**

One who, at the request of a member of a train crew left in charge of a wreck, during the temporary absence of the conductor, an emergency existing reasonably requiring such assistance, temporarily assists in the work of releasing horses and mules entangled among the wreckage, the regular crew not being reasonably able to release the animals, is for the time being the servant of the defendant and entitled to the same protection as any other servant.

**7. Negligence—Proximate Cause.**

There must be causal connection between the negligence averred and the injury received to entitle a plaintiff to recover.

**8. Master and Servant—Duty to Furnish Safe Place to Work—When Rule Inapplicable.**

The rule of law, making it the duty of the master to use ordinary care to furnish and maintain a reasonably safe place for the servant in which to perform his work, has no application to a situation where from the nature of the employment the object of the work is to make an unsafe place safe, and does not render the master responsible for dangers which necessarily inhere in the work and are only to be guarded against by the care of the servant himself in its performance.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pittsburg County; Harve L. Melton, Judge:

Action by L. G. Vie. against Arthur L. Mills, as receiver of the Fort Smith & Western Railroad. Judgment for plaintiff, and defendant brings error. Reversed.

Horton & Gill and Warner, Hardin & Warner, for plaintiff in error.

Wilson & Wilson and A. C. Sewell, for defendant in error.

Opinion by FOSTER, C. This action was commenced in the district court of Pittsburg county, Okla., on the 17th day of December, 1919, by L. G. Vie, defendant in error, plaintiff below, against Arthur L.

Mills, receiver of the Fort Smith & Western Railroad, plaintiff in error, defendant below, to recover the sum of $3,000 for alleged personal injuries caused by the negligence of the railroad company. By stipulation of counsel since the appeal has been lodged in this court, Charles T. O'Neal, receiver of the Fort Smith & Western Railroad, has been substituted as plaintiff in error in place of Arthur L. Mills, receiver. The parties will be hereinafter referred to as they appeared in the court below.

Issues were joined on the second amended petition of the plaintiff. The second amended petition charged that on or about the 20th day of December, 1917, while engaged in the interstate transportation of several cars of horses and mules a wreck occurred on the defendant's line of railroad a short distance east of Quinton, Okla., in which several freight cars, containing horses and mules, were derailed, and said animals entangled in the wreckage; and that plaintiff was employed to assist in rescuing said animals, and that while so employed, was directed by a member of the train crew in charge of the wreck to go among said mules and horses and place a rope around the neck of one of the animals so that the animal could be dragged from the wreckage and released, and while so engaged in placing the rope around the neck of a mule, another mule bit the plaintiff on the right leg, between the ankle and the knee, breaking two bones of the leg and causing a permanent injury, to his damage in the sum of $2,850, and that plaintiff was compelled to incur an additional expense of $150, for medical attention, making a total damage of $3,000.

The petition charged negligence by the defendant in failing to warn plaintiff of the dangers involved in going among said animals; in failing to furnish sufficient light, and in failing to provide a safe place for plaintiff to perform his work.

The answer of the defendant, besides a general denial, pleaded that the action was barred by the statute of limitations; contributory negligence of plaintiff, barring him from recovery; assumption of risk; res judicata by reason of an order of the United States District Court, entered on the 8th day of July, 1919, whereby plaintiff was estopped.

Said answer further affirmatively alleged that if plaintiff was employed at the time of his injury, he was employed in interstate commerce and that the defendant was then an interstate carrier.

The pleas of res judicata and the statute of limitations, however, were abandoned by

the defendant, and no error is assigned based upon any ruling of the court thereon at the trial.

The reply of the plaintiff was a general denial. The cause came on for trial in the district court of Pittsburg county on the 3rd day of March, 1921, before the court and a jury.

At the close of plaintiff's evidence, the defendant interposed a demurrer thereto, which was overruled by the court and exceptions allowed. At the close of all the evidence and before the jury was instructed by the court, it was agreed by both parties that if the plaintiff was employed in any capacity by the defendant at the time he was injured, he was then engaged in interstate commerce as such employe.

At the close of all the evidence a directed verdict was requested by the defendant, refused by the court, and exceptions taken. The trial resulted in a verdict for the plaintiff in the sum of $1,500. From a judgment based on this verdict, the defendant brings the cause regularly on appeal to this court, and complains that the trial court erred:

First. In overruling defendant's demurrer to the evidence, and in refusing to instruct a verdict for defendant.

Second. In instructing the jury.

Third. In admitting testimony.

We find ourselves unable to agree with the first contention of the defendant, that the plaintiff was a mere volunteer at the time of the accident, and that therefore the defendant owed plaintiff no duty.

It is true that the evidence upon the question of the employment of the plaintiff by defendant was somewhat vague and indefinite. Still, in view of the fact that a serious wreck had occurred without warning, in which scores of horses and mules were pinned underneath the wreckage of the derailed freight cars, we think, in spite of the fact that the conductor had only temporarily abandoned the wrecked train, and that adequate help to relieve the animals and clear the obstruction was close at hand, that an emergency existed authorizing the train crew who were left in charge of the wreck by the conductor, pending his return, to temporarily employ assistants to relieve the situation; and that these circumstances bring the case within the rule of law laid down by this court in the case of St. Louis & S. F. Ry. Co. v. Bagwell, 33 Okla. 189, 124 Pac. 320, and other cases cited in the opinion, where the court said in the syllabus:

"One who, at the request of a conductor in charge of a freight train, an emergency existing reasonably requiring such assistance, temporarily assists in the work of the carrier in the unloading of a safe from one of its cars, the regular crew not being reasonably able to unload same, is, for the time being, the servant of the defendant and entitled to the same protection as any other servant."

There is evidence that one of the train crew, during the absence of the conductor, requested plaintiff to assist in releasing the animals from the wreckage, that the railroad company would pay him for his services, and that it was while engaged in carrying out this request that the injuries were received.

The evidence further shows that when the conductor left the wreck in search of a wrecking crew, he instructed the balance of the crew to do what they could to release the animals from the wreckage of the derailed cars.

A more serious question, however, is presented when we come to consider whether or not the defendant was actually guilty of negligence in failing to warn the plaintiff against the danger of being bitten by one of the animals at the time he went among them to place the rope around the mule's neck. Before disposing of this proposition, let us notice the contention of the plaintiff that defendant was negligent in not furnishing a sufficient light. The evidence fails to disclose the exact hour at which the plaintiff received his injuries, but there is some evidence that about this time, or soon thereafter, it began growing dark. For instance, it appears that after the injury and while plaintiff was being carried to the automobile of Mr. Mathews, an examination was made of his injuries by means of a light.

Concerning the accident, plaintiff testified in answer to questions propounded by counsel, as follows:

"Q. Did you observe this pile of mules, I am speaking now of the mules where they attempted to draw one of them out and the rope slipped off, did you observe all of those mules and did they appear to be dead? A. I never paid any attention to the mules, whether they were dead or alive. Q. Didn't look to see whether any of them were dead or alive? A. No, sir: I didn't, because I was working trying to get them loose, get them out, I didn't know whether they were dead or alive. I never looked to see. Q. You didn't notice them, whether or not one of the mules was moving his head about in a mad, frantic way? A. No, sir. Q. Biting at anything? A. No, sir; it was not when I went up there. Q. Well, did you look? A. I looked as I went up. Q. I un-

derstood you to say you hadn't looked? A. I never looked to see whether they were dead or not, but if he had been throwing his head and biting I surely would have noticed it, but it hadn't attracted my attention, it wasn't cutting up enough that I would have noticed it. Q. Did the mule seem to be lying perfectly still? A. He seemed to be lying as still as that book until he grabbed me, I never knew when it moved until it caught hold of me."

From this testimony and the other facts and circumstances disclosed by the record, it is clear to this court that whether the accident occurred in daylight, twilight, or darkness, the plaintiff could and did see the condition of the surrounding objects, including the mule by which he was bitten, and there is, therefore, no causal connection between the alleged failure to furnish a light and the injury. From the plaintiff's testimony, it is clear that no light was needed to enable him to see and avoid the dangers.

In the case of St. Louis & S. F. R. Co. v. Snowden, 48 Okla. 115, 149 Pac. 1083, this court said:

"There must be causal connection between the negligence averred and the injury suffered to entitle plaintiff to recover; and this rule is so well established that it is unnecessary to support same by authority. There can be no presumption of negligence from mere proof of the accident. Chicago, R. I. & P. Ry. Co. v. Brazell, 40 Okla. 461, 138 Pac. 794. The work was simple, and the risk and danger obvious; and, having known the manner in which the work was to be done and the hazard which was involved, plaintiff voluntarily accepted the employment and must be deemed to have assumed the risk incident thereto. He is bound to use his eyes, to see that which is open and apparent; and, if he fails to do so, he cannot charge the consequence upon the master. * * * The evidence in this case fails to show any causal connection between the negligence complained of and the injury received, and exonerates defendant from liability."

It is clear, therefore, that liability of the defendant cannot be predicated upon the alleged failure to furnish a light.

There remains for consideration the contention of the plaintiff that the defendant was negligent in failing to warn plaintiff against the danger of being bitten by one of the animals when he was requested to go among the wreckage and place the rope about the mule's neck.

The rule is well settled by this court that the fact of an accident to an employe carries with it no presumption of negligence, and negligence is an affirmative fact for an injured employe to establish in order to render the employer liable. C., R. I. & P. Ry. Co. v. Nagle, 55 Okla. 235, 154 Pac. 667; C., R. I. & P. Ry. Co. v. Foltz, 54 Okla. 556, 154 Pac. 519; Midland Valley Ry. Co. v. Graney, 77 Okla. 54, 185 Pac. 1088.

In the instant case the trial court submitted the question of contributory negligence and assumption of risk on the part of the plaintiff to the jury, which was proper under our Constitution, if plaintiff had succeeded in establishing primary negligence. As we view the case, however, the important matter to be determined is whether primary negligence on the part of the defendant has been shown. The mere fact that plaintiff was injured is not enough of itself to create a liability against the defendant. In order to entitle a party to maintain an action for tort, there must be a violation of some duty either of commission or omission on the part of the defendant prejudicial to the rights of the plaintiff, and the burden is upon the plaintiff to establish such wrongful acts by a preponderance of the evidence. The question here presented is whether there was any evidence tending to prove negligence.

The plaintiff was a mature man, and testified that he had been farming 18 years and owned stock all that time which he himself worked and handled. That at the time of his injury he was employed by the defendant in clearing the track of a wrecked freight train, consisting of broken and demolished freight cars, and in releasing the horses and mules that were entangled and pinned down by the wreckage of said freight cars. The plaintiff testified that he did not know the mule would bite when he entered among the wreckage to help drag one of the mules therefrom. Neither does the testimony show that the defendant knew that the mule would bite, and the evidence fails to show that the mule was known by the defendant to possess vicious propensities.

The question is, was the defendant negligent as a matter of law in failing to foresee and warn the plaintiff against the danger of being bitten by a mule possessing no known vicious propensity?

In Chicago, R. I. & P. Ry. Co. v. Nagle, supra, the facts were very similar to those in the case at bar. There, one of the defendant's freight trains was wrecked, and the plaintiff, a regularly employed section hand, or common laborer, with a large number of other employes was called to clear the wreckage. While removing debris and changing freight from the wrecked cars to other cars, the plaintiff slipped from the road embankment and fell into a ditch, into which some of the debris and broken tim-

bers of the wrecked cars had been thrown, and in falling he lit upon a nail protruding from a piece of board taken from one of the wrecked cars. It was proven that plaintiff did not know the board with the nail upturned was there; that he did not notice this board and while walking along the dump carrying a bale of hay, he slipped off, falling into the ditch, driving the nail through his foot.

In reversing the judgment, this court said:

"The mere fact that the servant received injury does not establish, even prima facie, the negligence or breach of duty of the master. * * * Whether or not a defendant is guilty of negligence depends upon the question whether he exercised reasonable care under the circumstances existing at the time; not whether he had done everything which it was possible to do in the light of every possible danger that might arise. * * * Negligence must be shown by evidence. Proof of injury is not proof of negligence. The evidence, to justify a finding of negligence, must show a breach of duty on the part of the defendant, such that a reasonable person should have foreseen would as a natural consequence cause an injury; not necessarily would probably cause an injury in the sense of more likely to cause an injury than not, but the likelihood must be such that reasonable person could foresee that injury would result in the ordinary course of things—that injury was one of the probable results and likely to happen. A mere possibility of the injury is not sufficient, where a reasonable man would not consider injury likely to result from the act as one of its ordinary and probable results * * * For accidental injuries, or such as occur without any act of negligence on the part of the master, the master is not liable to the injured servant."

In the body of the opinion the court quotes extensively from numerous authorities, and among others, the language of our court in Sloan et al. v. Warrenburg, 36 Okla. 523, 129 Pac. 720, where it is said:

"Whether or not a defendant is guilty of negligence depends upon the question whether he exercised reasonable care under the circumstances existing at the time, not whether he had done everything which it was possible to do in the light of every possible danger that might arise. It may well be that after an accident has actually happened, in order to prevent its occurrence, an owner might exercise extraordinary care, and in so doing take precautions which would never have occurred to him but for the accident, and which was not usually observed in the business. A party's conduct must be judged by the circumstances, conditions, and duties existing at the time, and which are known to him, or in the exercise of reasonable care should be known to him."

In 2 L. R. A. (N. S.) 1188, it is said:

"The criterion usually adopted in determining the liability of the owner for injuries inflicted by a domestic animal is whether he could have reasonably anticipated the occurrence."

In 18 R. C. L., page 569, it is said:

"* * * Not only must the danger of an employment, in order to create a duty of warning and instruction, be one that is unknown to the employe, but it also must be one that is known to the employer or might be known to him by the exercise of reasonable vigilance. The employer is not bound to foresee and give warning of remote, improbable, and exceptional occurrences; his duty is limited to such perils as reasonably are to be anticipated."

In Fisher v. Prairie, 26 Okla. 337, 109 Pac. 514, this court said:

"* * * It is not necessary that a servant should be warned of every possible manner in which injury may occur. He must examine his surroundings and take notice of obvious dangers and operations of familiar laws.

"* * * Moreover, the duty to instruct against dangers incident to the work extends only to such dangers as are known to the master himself, or which are reasonably to be apprehended from the nature of the employment.

"* * * The master is always warranted in acting on the presumption that the servant understands the dangers incident to normal, ordinary risks, and also that adults who hire themselves out to do a particular kind of work are supposed to understand the ordinary dangers which pertain to such work, and to accept the risks incident to the same."

Again in Buss v. C., R. I. & P. Ry. Co., 77 Okla. 80, 186 Pac. 729, this court held:

"It is where the danger is an extraordinary one, that is a danger not incident to the service and the employer has knowledge of such danger, that he is guilty of negligence if he fails to warn the employe."

Applying the rules of law laid down in the cases cited, can it be said that the railroad company could have foreseen that a mule, possessing no known vicious propensity, would bite the plaintiff two or three feet away, or that an injury could be the natural and probable result of its failure to warn the plaintiff? Can it be said that the defendant in the presence of an unforeseen emergency, and while engaged in demolishing the wrecked cars, was negligent toward the plaintiff in failing to warn him against the possible bite of a mule? We do not think its failure so to do under the circumstances constituted actionable negligence,

and think that the trial court should have sustained the demurrer interposed by it to the plaintiff's evidence.

It is admitted by both sides that the trial court did not instruct the jury on the third ground of negligence relied on, and that the question of the alleged failure of the defendant to furnish the plaintiff a safe place in which to work was not submitted to the jury.

However, in any view of the case, the doctrine of negligence based upon a failure to furnish plaintiff a safe place to work can have no application to a situation where as here the very object and purpose of the work was to make safe a place which owing to an unforseen catastrophe was patently unsafe. As was said by the Circuit Court of Appeals in the case of Florence & C. R. Co. v. Whipps, 138 Fed. 13, 70 C. C. A. 443:

"It is a general rule of the law governing the relation of master and servant that it is. the duty of the master to use ordinary care to furnish and maintain a reasonably safe place for the servant in which to perform his work. This rule as to 'safe place' only applies to such place as the master constructs, prepares, or selects for such purpose. It has a very limited application to the erection of new buildings or structures, though it may apply to stagings and the like supplied by the master, and does not render the master responsible for dangers which necessarily inhere in the work and are only to be guarded against by the care the servants themselves shall exercise in its performance. * * * · Gulf, etc., Ry. v. Jackson, 65 Fed. 48, 12 C. C. A. 507; Minneapolis v. Lundin, 58 Fed. 525, 7 C. C. A. 344; Porter v. Silver Creek, etc., Coal Co., 84 Wis. 418, 423, 54 N. W. 1019; Colo. Coal & Iron Co. v. Lamb, 6 Colo. App. 255, 266, 40 Pac. 251; Carlson v. Railway, 21 Ore. 450, 28 Pac. 497.''

As we view the case, the evidence fails to disclose any negligence on the part of the defendant.

Having found that the trial court erred in submitting the case to the jury, it is unnecessary to notice alleged errors in the instructions and in the admission of testimony.

Judgment of the trial court is therefore reversed and the cause remanded, with directions to dismiss plaintiff's petition.

By the Court: It is so ordered.