## Standard Oil Co. v. Adams.

(Decided Dec. 17, 1937.)

BEN V. SMITH & SON for appellant.

R. C. TARTAR for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

At and prior to the happening of the accident here involved (January, 1936) the Standard Oil Company maintained a filling station in Somerset, Ky., which was in charge of E. P. Buchanan, as superintendent, and John B. Gragg, as assistant superintendent. The filling station building sat some distance from the sidewalk with a more or less wide space between the two, sufficient to contain two service pumps about midway of the space with room enough for a driveway on either side, thereby creating facilities sufficient to serve four cars at once. On a day of the month referred to, a customer appeared and stopped his automobile on one of the driveways opposite a pump to obtain some gasoline. He was promptly waited on, and then attempted to continue his journey when he found that his automobile would not start. After some unsuccessful efforts to make it do so, he requested Buchanan to call a mechanic to remedy the defect, and his request was complied with. After some twenty or thirty minutes waiting, and no mechanic appearing, the appellant and plaintiff below, Ed Adams, drove up with his automobile. He was an automobile mechanic and had worked at the trade for fifteen years or more. Buchanan knew him and informed him of the situation with reference to the customer's car and, perhaps, asked him if he would examine it. He undertook to do so and lifted the hood on one side of the customer's automobile and requested Buchanan to "step on the starter"; Buchanan in the meantime having taken his position on the front seat of the disabled car. After examining that side plaintiff went to the other side of the car and lifted the lid on that side when Buchanan and Gragg, who was present, both say that he made the same request of Buchanan; but which plaintiff denied, and stated that he told Buchanan at that time not to step on the starter. At any rate the movement produced at the time by Buchanan's stepping on the starter resulted in plaintiff losing a finger and sustaining damage to another one.

He later filed this ordinary action against defendant in the Pulaski circuit court to recover $2,000 as compensation for his injuries, and in his petition he alleged the foregoing facts, and charged that for the time being he was in the employ of defendant and that the injuries he sustained were produced by the gross carelessness and negligence of its superintendent, Buchanan. The petition was demurred to, but it was overruled, fol-

lowed by other motions and the filing of an answer. The latter denied the negligence charged, as well as any duties defendant owed to plaintiff in the circumstances, and, in substance, averred that he was a mere volunteer; there being no authority in Buchanan to employ him to render any service in behalf of defendant, but only to serve the owner of the crippled automobile pursuant to the request made by him. Following pleadings made the issues and at the trial the jury, under the instructions given by the court, returned a verdict in favor of plaintiff for the sum of $1,000 upon which judgment was rendered. Defendant's motion for a new trial was overruled, followed by this appeal.

A number of errors are relied on and argued by learned counsel for defendant, but the one to which the greater part of the brief is devoted is the refusal of the court to sustain defendant's motion for a directed verdict in its favor made at the close of plaintiff's testimony and again at the close of all the testimony. We are thoroughly convinced that counsel is correct in that contention.

It will be noted that plaintiff is relying upon what is known in the law as the "Emergency Employment" doctrine. A number of cases are cited, both domestic and foreign, in which it is defined, recognized, and applied. Many more could have been cited, since the principle it embodies is of universal application, of long standing, and not disputed by any court. In brief it is: That a regularly employed servant of a principal possesses implied authority to engage an assistant to aid the servant in performing a task, within the scope of the duties of the servant in serving his master, in cases of emergency rendering it absolutely necessary to obtain such assistance, and without which the emergency conditions could not be overcome by the servant, or any coemployee in the regular service of their common master. Some of the texts and some of the cases so defining the doctrine are, St. Louis & S. F. R. Company v. Bagwell, 33 Okl. 189, 124 P. 320, 40 L. R. A., N. S., 1180, and annotations; Houghton v. Pilkington, 1912, 3 K. B. 308, Ann. Cas. 1913C, page 792, et seq.; Bernhardt v. American Ry. Express Company, 218 App. Div. 195, 218 N. Y. S. 123; Henry Quellmalz Lumber & Mfg. Company v. Hays, 173 Ark. 43, 291 S. W. 982; Shafer v. St. Louis & S. F. Ry. Company, 201 Mo. App. 107, 208 S. W. 145; Louisville & N. Ry. Co. v. Vaughn's Transfer

Company, Ky., 123 S. W. 253; Central Kentucky Traction Company v. Miller, 147 Ky. 110, 143 S. W. 750, 40 L. R. A., N. S., 1184; W. H. Neill Company v. Rumpf, 148 Ky. 810, 147 S. W. 910, L. R. A. 1917C, 1199; Kentucky Lumber Company v. Nicholson, 157 Ky. 812, 164 S. W. 84, 51 L. R. A., N. S., 1213; Baringer v. Zachery, 206 Ky. 229, 267 S. W. 182; 18 R. C. L. 580, and annotations in 76 A. L. R. beginning on page 963. On page 965 of the latter volume, the annotator cites a considerable number of domestic cases approving and applying the doctrine, as well as approving its limitations.

On page 971 it is pointed out, not only that the emergency, within the meaning of the doctrine, must be a sudden and unexpected one, but also that it must be one to remedy which the employing servant, plus the aid of regularly employed assistants at hand (if any) cannot perform. In the treatment of that phase of the case the annotator cites the domestic one of Central Kentucky Traction Company v. Miller, supra, in which we approved this qualification to the generally stated rule embodied in the doctrine that, "It is not sufficient that the person employed believes that the emergency exists; it must in fact exist if there is authority for the employment" by the regularly employed servant in charge of the particular service. The rule is further qualified by the requirement that before the doctrine may be invoked by the emergency employed assistant the engagement must be one within the scope of duties to be performed for the master by the employing servant. Many additional cases, as well as texts, could be cited in substantiation of the rule and its qualifications, as so stated, but we deem it unnecessary, since many of them will be found in the opinions delivered in the cases, supra. All of the propositions named are universally accepted and are thoroughly settled.

It stands uncontradicted in this case that neither Buchanan nor Gragg were employed as mechanics to repair automobiles of customers, or for any one else, since neither of them were mechanics and they were employed solely and only to operate the gasoline station of defendant at which only gasoline, oil, and automobile tires were sold. It likewise is uncontradicted in this case that the owner of the crippled automobile requested Buchanan to engage for him a mechanic to remedy the condition of his automobile so that he might

continue his journey. Plaintiff was made aware of the condition at the time he undertook to examine the stranger's automobile in order to remedy the defect; but, if he had not been so informed the legal principles above stated would apply and govern the rights between him and defendant the same as if he had been so notified. Applying the facts to the law, we find that the repairing of the stalled car, so as to permit its owner to continue upon his journey, was no part of the duty of Buchanan, since neither he nor his master were engaged in such undertakings. But if it were otherwise, and the performance of such services was within the scope of Buchanan's employment, then the conditions were not such as to produce the character of emergency necessary to create the relationship of master and servant between plaintiff and defendant, since the proof uncontradictedly shows that if the crippled car occupied space necessary at the time for the performance of the master's (defendant in this case) business conducted by its superintendent, Buchanan, then he and Gragg could have removed such obstruction with all ease, by loosening the brakes on the car and permitting it by its own momentum to roll out of the way from the elevated place it occupied, or to push it away from that place. The ability to so remove it, without outside assistance, was uncontrovertibly proven and no effort made to contradict it. Indeed, counsel for plaintiff in this case appears to have recognized the necessity of alleging and trying to prove that it was necessary for that car to be removed in order to prevent the business of defendant from being obstructed. In that way counsel appears to have foreseen that the mere repairing of the disabled automobile was not in the line of Buchanan's employment, or a part of the business of his principal then and there being conducted. Counsel, therefore, attempted to rest his client's case upon the contention that the removal of the stalled car was necessary for the prosecution of the defendant's business, and, therefore, its servant, Buchanan, possessed authority to employ plaintiff to perform the duties he undertook. But that employment, as we have seen, was at the request of the owner of the car only. Furthermore, it was not necessary for the prosecution of defendant's business, and, lastly, if neither of those two reasons for the non-application of the doctrine existed, then the emergency could easily be overcome and the

condition remedied without any help by employed assistants.

Plaintiff's counsel places much reliance upon the domestic Baringer Case, supra; but the difference between the facts of that case and those in this one is both vast and broad. The facts in it indisputably showed that the task for which the temporarily employed assistant (plaintiff in that case) was engaged was clearly within the scope of the employing servants' duties. The labor to be performed therein, in order to remedy the emergency situation, could not be done by the employing servant alone, and the facts presented a case strictly within the emergency employment doctrine, so as to render the plaintiff the servant of the principal therein and who was the defendant in that action. The relationship between the two of master and servant clearly existed. The facts in this case are directly to the contrary, and show beyond peradventure of doubt the non-liability of defendant to plaintiff for the injuries he sustained. The persons to whom he should look, if any, for compensation are the owner of the stalled car, and to *his* temporary servant, Buchanan, whom he (owner) engaged to procure the necessary help to repair his automobile so that he might continue his journey. The record presents a clear case of no connection whatever of defendant with the unfortunate accident that befell plaintiff.

There are other objections discussed in brief and relied on as reversible errors, relating to the admission of testimony and the giving of instructions, some of which at least appear to possess merit, but in view of the conclusions we have reached it becomes unnecessary to discuss or determine them, and they are reserved; but for the reasons stated the judgment is reversed, with directions to set it aside, and to sustain the motion for a new trial, and for proceedings consistent with this opinion.