Bruce BAKER et al., Appellants,

v.

Joseph B. WILLETT, Appellee.

Court of Appeals of Kentucky.

July 2, 1965.

Rehearing Denied Oct. 1, 1965.

Lively M. Wilson and Stites, Peabody & Helm, Louisville, for appellants.

G. William Clements, J. Walter Clements, Louisville, for appellee.

MILLIKEN, Judge.

On the Watterson Expressway about 3:00 a. m., on February 7, 1959, the appellee, Joseph Willett, was struck by the oncoming automobile of Gene Allen Hamm which he was trying to flag down so that the appellant Bruce Baker, operator of the service truck of the appellant Standard Oil Company, could pull out the mired automobile of Robert H. Hinton, Jr., one of Willett's friends, from the divider strip between the east and westbound lanes of the Expressway. The front bumper of the stranded automobile was about 2½ feet from the eastbound lanes and was the part of the car closest to the paved portion of the highway.

In the litigation which followed Willett obtained judgment against Hamm, Baker and the Standard Oil Company which the jury apportioned $3,650 against Hamm, the driver of the oncoming car, $24,350 jointly against Standard Oil and its employee, Baker. Hamm satisfied the judgment against him, and Standard Oil and Baker have appealed, their motions for a directed verdict and judgment notwithstanding the verdict having been denied. The crux of the case on appeal is whether Willett was a mere volunteer or whether he was an emergency employee of Standard Oil and, if the latter, whether his knowledge of the danger involved in the flagging operation was such that it must be concluded as a matter of law that he assumed the risk.

After his automobile became mired, appellee's friend, Hinton, went to appellant's Standard Oil Station and arranged to have appellant's attendant, Bruce Baker, pull the stranded automobile from the median. Hinton did not have enough money for the service run, so he phoned appellee, Willett, and requested him to bring him some money. Appellee Willett brought the necessary money to the Standard Oil Service Station. There he met Hinton and the two proceeded with Baker in the Standard Oil truck to the place where the Hinton automobile was stalled. At the point where the car was stalled it was very dark and the road was wet from the misty rain or snow that was falling.

To extricate the mired automobile from the center or median strip of the highway, Baker backed his employer's truck to a point where he could connect the chain from the truck to the stalled automobile. This maneuvering resulted in the Standard Oil truck's complete blocking of the inside or north east-bound traffic lane and partial blocking of the outside or the south east-bound traffic lane. However, traffic was still able to pass by using the shoulder on the south side of the road. Though both the headlights and the taillights of the truck were turned on, illumination from this source was not directed toward oncoming motorists because the truck was facing in a southeasterly direction, that is, the truck's headlights were facing in the same direction as the oncoming traffic. According to Baker, the spotlight was adjusted so that it shone in the direction from which traffic was approaching. According to Hinton and the appellee, the spotlight was adjusted in such a manner that it served no useful purpose. In the presence of the appellee and Hinton the Standard Oil employee, Baker, requested

that someone go up the road to flag traffic in order that passing motorists would proceed with caution. Baker testified that it was necessary to place himself and his employer's truck in this precarious position in order to pull out Hinton's car and that someone was needed to flag traffic for safety precautions.

By having oncoming traffic flagged, protection was afforded to the Standard Oil truck, to the Standard Oil employee, Baker, and to the Standard Oil customer, Hinton. Since the Standard Oil truck had been placed in a position whereby it was blocking the free flow of traffic, Standard Oil owed a duty to warn unsuspecting motorists of the impending danger. Hinton's mired automobile did not block traffic on the highway.

When appellee went to flag traffic, he was not provided with any warning device such as a flashlight, a flare, or a fusee, nor was a flare lighted at the site of the mired car and Standard Oil truck. The record provides conflicting testimony as to whether or not these items were requested by Willett who went up the road about 100 feet and began to flag traffic by flapping his grey overcoat. Willett succeeded in attracting the attention of the drivers of two automobiles and two semi-trailers prior to the accident which is the subject of this suit. Defendant Allen Hamm approached the scene of the accident traveling eastward in the south lane of the Expressway. He claimed that he was driving 40 to 50 miles per hour and that he saw the Standard Oil truck when he was 150 feet away. Hamm jammed on his brakes full force. This caused his car to skid down the road sideways and the car's left rear fender struck the appellee when he was in the north lane. Appellee was knocked 70 feet and severely injured.

In the case before the Court the mired car was not blocking the highway and there was no pressing necessity that it be removed immediately for that reason. In fact, there was no danger to the master's property until and unless Baker placed Standard's truck in a precarious position on the highway. Thus, Baker had to deliberately create a highway emergency for one to exist. Baker had control of the situation; he could have waited until visibility was better and conditions safer.

We view the factual situation presented as no emergency in the sense that a situation or condition had been thrust on Baker over which he had no control, and had to have help in order to protect his employer's interests. Every facet of the developing situation was foreseeable by all the individuals concerned. They all knew that the Hinton car was not a traffic hazard where it was mired. It was its extrication which would create the hazard, and Hinton, Baker and Willett all realized it and that is why they wanted someone to flag down approaching traffic. When Willett, an experienced truck driver, went back to flag down oncoming cars, he was not only helping Baker but he also was helping Hinton and, we think, undoubtedly knew there was a risk involved in his undertaking and what the risk was. The risk he assumed was the very one which caused his injury—the risk of being struck by an approaching car. There was no emergency rendering it "absolutely necessary to obtain such assistance (as Willett's) and without which the emergency conditions could not be overcome by the servant," Baker. Standard Oil Company v. Adams, 271 Ky. 221, 111 S.W.2d 668, 669.

The judgment is reversed with directions to enter judgment n. o. v. for the defendants.