**AMERICAN COMMERCE INSURANCE COMPANY,**
Appellant,

v.

**Paula BROWN, as Personal Representative of the Estate of Jeremy Brown; William Brown; Robert Belflowers; Justin Brown and Paula Brown, Appellees.**

No. 2003–CA–000547–MR.

Court of Appeals of Kentucky.

May 14, 2004.

Rehearing Denied Nov. 3, 2004.

Discretionary Review Denied by
Supreme Court Aug. 17, 2005.

Douglas W. Becker, Clarence A. Wilbon, Wyatt, Tarrant & Combs, LLP, Louisville, KY, for appellant.

Keith A. Sparks, McCoy & Sparks, Bardstown, KY, for appellees.

Before EMBERTON, Chief Judge; BUCKINGHAM and VANMETER, Judges.

## OPINION

EMBERTON, Chief Judge.

This case involves the interpretation of the term "domestic employee," as used in a homeowners' insurance policy issued by American Commerce Insurance Company to Robert and Elaine Belflowers. Jeremy Brown, a neighbor to the Belflowerses, was killed after volunteering to help them move a piano. The circuit court held that Brown was a domestic employee, and therefore, covered under the policy. We are unable to agree with the court's interpretation of the term domestic employee, and therefore reverse.

The Belflowerses and their neighbors, William and Paula Brown, had a close relationship and often helped each other with domestic chores. In early 2000, the Belflowerses were in the process of remodeling their home, and in preparation it became necessary to move a piano out of the house and into a backyard shed.

Robert asked for Jeremy Brown's help in moving the piano. While it was being loaded onto Robert's pickup truck, Paula, Jeremy's mother, arrived and began assisting with the loading, after which it was transported to the shed. Paula suggested that she get William and Justin, another son, to help with the unloading. Upon William's arrival, he and Robert discussed the unloading and decided it better to unload the piano onto the front porch of the shed. Justin testified that William instructed him to drive the truck to the front of the shed. Jeremy then got into the bed of the truck with the piano. As Justin was driving the truck the piano shifted and Jeremy either jumped from the truck or was pushed out by the piano. In either event, he fell to the ground and immediately the piano fell on him resulting in his death.

The Belflowerses' homeowners' insurance policy provides that there is no coverage for injuries arising out of the use of a motor vehicle except for injuries to domestic employees. Specifically, the policy states that it does not apply to:

"bodily injury" or "property damage" which results from the ownership, operation, maintenance, use, occupancy, renting, loaning, entrusting, supervision, loading or unloading of "motorized vehi-

cles," trailers or watercraft owned or operated by or rented or loaned to an "insured." However, "we" do pay:

1) for "bodily injury" to a person in the course of performing duties as a "domestic employee."

Domestic employee is defined as:

"Domestic employee" means a person employed by an "insured" to perform duties that relate to the use and care of the "insured premises." This includes a person who performs duties of a similar nature elsewhere for an insured. This does not include a person while performing duties in connection with the "business" of an "insured."

The circuit court held that the policy was ambiguous. However, in construing its provisions favorably to the insured, Jeremy was held to be a domestic employee at the time of his fatal injury.

▇▇▇ The standard of review of a summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law."[1] The law applicable to interpretation of an insurance contract is concisely stated that:

As a general rule, interpretation of an insurance contract is a matter of law for the court. While ambiguous terms are to be construed against the drafter and in favor of the insured, we must also give the policy a reasonable interpretation, and there is no requirement that every doubt be resolved against the insurer. *Finally, the terms should be interpreted in light of the usage and understanding of the average person.*[2] (Citations omitted.) (Emphasis ours.)

We do not find anything ambiguous about the term domestic employee. In common everyday usage, "employee" denotes that there is a master servant relationship.[3] Although whether a person received compensation for his service is not necessarily determinative of the existence of the relationship, it is a proper element to be considered.[4] In *Pennsylvania Casualty Co., supra,* applying Kentucky law, the court explained the applicable test:

The test as to the existence of the relationship is whether there is an understanding between the parties that one is to render personal service to or for the benefit of the other, and recognition by them of the right of one, the employer or master, to order and control the other, the employee or servant, in the performance of the work and to direct the manner and method of its performance.[5]

▇▇▇ There is no one fact or circumstance that is conclusive as to whether the master servant relationship exists; however, the right to direct what work shall be done and the manner it shall be done and the power to discharge the alleged employee from service are the most prominent factors.[6]

The facts reveal that the families were neighborly with one another, often helping each other with the daily tasks of family life. The tragic day of Jeremy's death was no different. It was a joint effort to move

1. *Scifres v. Kraft,* Ky.App., 916 S.W.2d 779, 781 (1996).

2. *Stone v. Kentucky Farm Bureau Mutual Insurance Company,* Ky.App., 34 S.W.3d 809, 810–11 (2000).

3. *See Pennsylvania Casualty Co. v. Elkins,* 70 F.Supp. 155 (D.C.Ky.(1947)).

4. *W.H. Neill Co. v. Rumpf,* 148 Ky. 810, 147 S.W. 910 (1912).

5. *Pennsylvania Casualty,* at 158.

6. *Mahan v. Litton,* Ky., 321 S.W.2d 243, 245 (1959).

the piano, and although the Belflowerses directed the destination of the piano, they had no right to control Jeremy's actions nor could they discharge him. The neighborly offer of help by the Browns had a tragic ending; Jeremy, however, was no more an employee of the Belflowerses than any neighbor or friend would be who assisted another in carrying in groceries, opening a door, walking the family pet, or performing other gratuitous acts.

The summary judgment is reversed and this case is remanded for entry of a judgment consistent with this opinion.

ALL CONCUR.